**James L. "Hopsing" MILLER,**
**Appellant**

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

**No. 2010–SC–000562–MR.**

Supreme Court of Kentucky.

Dec. 22, 2011.

---

404

Emily Holt Rhorer, Department of Public Advocacy, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Joshua D. Farley, Assistant Attorney General, Attorney General's Office, Office of Criminal Appeals, Frankfort, KY, for appellee.

Opinion of the Court by Justice ABRAMSON.

In 2006, Appellant James Miller was convicted of possession of a controlled substance in the first degree and being a persistent felony offender in the first degree (PFO I), for which he received a twenty-year prison sentence. Finding error on appeal, this Court remanded the case for a new penalty phase wherein the jury again sentenced Miller to twenty years in prison. Appealing to this Court as a matter of right, Miller claims (1) the

Commonwealth improperly introduced evidence of his prior uncharged acts of misconduct during the penalty phase; (2) the presence of an armed guard violated his rights to a fair trial and due process; and (3) the trial court erred when it refused to strike the jury for not representing a fair cross-section of the community. Finding no reversible error, we affirm the judgment of the Adair Circuit Court.

## RELEVANT FACTS

In 2006, Miller was found guilty of possession of a controlled substance in the first degree. After the jury returned the guilty verdict, the Commonwealth amended the indictment to make the possession count a second or subsequent offense. On appeal, this Court affirmed Miller's conviction for possession of a controlled substance in the first degree but held it was improper for the Commonwealth to amend the indictment after the return of the verdict. The Court vacated the conviction of second or subsequent offense and remanded for a new penalty phase.

During the new penalty phase, the jury heard testimony from Perry Parrish, a probation and parole assistant supervisor, regarding Miller's three prior felony convictions and parole violations. On April 29, 1998, Miller was convicted of trafficking in a controlled substance in the first degree and received a sentence of seven years and six months. Miller received parole on August 20, 1999, but it was revoked on October 29, 2001. On December 3, 2001, Miller was convicted of four counts of trafficking in a controlled substance in the first degree, second offense, for incidents that occurred on December 15, 1999, February 25, 2000, September 20, 2000 and September 21, 2000. Miller received five year concurrent sentences on each count. Miller was again convicted of trafficking in a controlled substance in the first degree

on January 8, 2003 and received a five-year sentence, to run concurrently with a sentence he was then serving. Miller was released on parole on February 9, 2004, but his parole was again revoked nearly a year later on February 15, 2005. Miller received parole for a third time on March 22, 2006. The events underlying this most recent conviction occurred approximately two months later, on May 26, 2006. Parrish also testified about credit Miller could receive against this sentence and when Miller could be eligible for parole. Both Miller and his sister testified as well. The jury found Miller to be a PFO 1 and recommended a twenty-year prison sentence. The trial court sentenced in accord with the jury's recommendation.

Miller claims (1) the Commonwealth improperly introduced evidence of his prior bad acts during the penalty phase; (2) the presence of an armed guard wearing a "Corrections" vest violated his constitutional rights; and (3) the jury did not represent a fair cross-section of the community. The first two claims of error were not preserved and are reviewed for palpable error, as discussed below. The final allegation of error was preserved by Miller's motion to strike and is reviewed for abuse of discretion. *Ratliff v. Commonwealth*, 194 S.W.3d 258 (Ky.2006). Finding no reversible error, we affirm.

## ANALYSIS

**I. The Commonwealth's Introduction and Discussion of Miller's Prior Bad Acts During the Penalty Phase Did Not Constitute Palpable Error.**

The purpose of Kentucky's Truth–in–Sentencing legislation is to provide the jury with relevant information necessary to determine an appropriate sentence for a particular offender. *Williams v. Commonwealth*, 810 S.W.2d 511 (Ky.1991). The jury is not required to

"sentence in a vacuum without any knowledge of the defendant's past criminal record or other matters that might be pertinent...." *Commonwealth v. Reneer*, 734 S.W.2d 794, 797 (Ky.1987). During the penalty phase, the Commonwealth may offer evidence relevant to sentencing, including:

1. Minimum parole eligibility, prior convictions of the defendant, both felony and misdemeanor;

2. The nature of prior offenses for which he was convicted;

3. The date of the commission, date of sentencing, and date of release from confinement or supervision from all prior offenses;

4. The maximum expiration of sentence as determined by the division of probation and parole for all such current and prior offenses;

5. The defendant's status if on probation, parole, postincarceration supervision, conditional discharge, or any other form of legal release;

6. Juvenile court records ...; and

7. The impact of the crime upon the victim or victims....

Kentucky Revised Statute (KRS) 532.055(2)(a). As the term "including" in the opening sentence of KRS 532.055(2)(a) indicates, this list is not exhaustive. *Cornelison v. Commonwealth*, 990 S.W.2d 609 (Ky.1999). A court may also allow evidence that is "similarly and equally 'relevant to sentencing' as those types of evidence the statute explicitly mentions." *Garrison v. Commonwealth*, 338 S.W.3d 257, 260 (Ky.2011). Trial courts are further guided by Kentucky Rules of Evidence (KRE) 401 and 403, which set the threshold requirement that evidence must be relevant to be admissible and provide that a trial court may nevertheless exclude relevant evidence if its probative value is substantially outweighed by the danger of undue prejudice, confusing the issues or misleading the jury.

In this case, without Miller having testified on direct in a manner that would have opened the door, the Commonwealth cross-examined Miller about prior acts of misconduct for which he was neither charged nor convicted.

Commonwealth: How many times have you sold it [cocaine] and you didn't get caught?

Miller: I don't know. Plenty, I'd say.

\* \* \* \* \* \*

Commonwealth: Hundreds?

Miller: No, not that many.

Commonwealth: Fifty?

Miller: Yea.

Commonwealth: At least, wouldn't you say?

Miller: Probably.

Commonwealth: I mean, you were selling it several times a day, weren't you?

Miller: On a good day's work, somebody's coming by to get me high.

Commonwealth: What's the most times you'd sell cocaine in a day?

\* \* \* \* \* \*

Miller: It's hard to say ... probably fifteen to sixteen times, maybe more.

\* \* \* \* \* \*

Commonwealth: And you were caught selling cocaine in '98 and you'd been selling for years prior to that, hadn't you?

Miller: Yes.

Commonwealth: And you sold for years after that, didn't you?

\* \* \* \* \* \*

Miller: Off and on, when I wasn't in prison.

The Commonwealth also referred to this testimony during closing arguments.[1] Miller claims this cross-examination and the comments made during closing arguments were improper and violated his rights to due process and a fair trial.

 While it appears this Court has not specifically considered whether prior uncharged acts of misconduct may be admitted in the penalty phase of trial, the Court did recently consider a different type of evidence proffered at the penalty stage in *Garrison*, 338 S.W.3d at 259. In that case, this Court held a defendant's parole violations may be introduced during the penalty phase of trial, notwithstanding their absence from the evidentiary categories listed in KRS 532.055(2)(a). *Id.* at 260. The Court found parole violations to be sufficiently similar and equally as valuable as the evidence listed in the statute so as to warrant admission. *Id.* The Court further found KRE 404(b)[2] did not bar the admission of parole violations during the penalty phase because, while parole violations or "any other prior bad acts, are never admissible 'to prove the character of a person in order to show action in conformity therewith,'" parole violations and other prior bad acts may be admissible "for some other purpose," including for truth in sentencing during the penalty phase. *Id.* at 260–61.

 More on point for this case, the Court has also held that admission of a defendant's prior uncharged acts of misconduct through the testimony of a co-defendant in a joint trial warranted reversal because the evidence was highly prejudicial to the defendant. *Foster v. Commonwealth,* 827 S.W.2d 670 (Ky.1991). Unlike the present case, the claim of error in *Foster* was preserved. *Id.* at 679. During the penalty phase, in support of her duress claim, the co-defendant testified extensively as to numerous prior bad acts committed by the defendant. *Id.* at 680–81. The Court held that, while the evidence was relevant to the co-defendant's duress claim, it was highly prejudicial to the defendant and its admission at the joint penalty phase was error. *Id.* at 682. Subsequent to a discussion of permissible death penalty aggravating factors, the Court stated that, while non-statutory aggravating factors are generally allowed in the penalty phase, "specific acts of uncharged misconduct are not factors which a jury may consider in its determination of a defendant's penalty and, therefore, are inadmissible in the penalty phase." *Id.*

 While *Garrison* references "prior bad acts," the specific issue in that case was the introduction of parole violations in the penalty phase, and it is that particular category of evidence to which its holding is confined.[3] *Foster* is the relevant prece-

---

1. In one instance, the Commonwealth speculated as to how much money Miller could have made selling drugs. The Commonwealth multiplied the number of times Miller testified to selling cocaine on a good day by $25.00, the amount of money he received for the cocaine in this case, to determine that Miller made "$375.00 in cash a day. If he only worked five days a week at that, it was nearly $1900.00 in cash if he had good days."

2. KRE 404(b)(1) provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may,

however, be admissible ... if offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

3. Parole violations are distinguishable on several grounds including, most notably, the fact that there is a "charge" and then an official determination that the defendant violated parole. Also, parole is a particular form of release about which the jury hears proof in the penalty phase of a trial and parole violations speak to the defendant's prior experience on parole.

dent regarding the admissibility in the penalty phase of prior uncharged acts of misconduct. And while we find, in conformity with *Foster*, that Miller's prior uncharged acts of misconduct should have been excluded, we need not discuss this conclusion because the error was not preserved and, there being no resulting manifest injustice, Miller is not entitled to relief.

■■■ An unpreserved claim of error, such as in this case, is reviewed for palpable error. Kentucky Rule of Criminal Procedure (RCr) 10.26.[4] The measure by which palpable error is determined is a "stringent standard." *Martin v. Commonwealth*, 207 S.W.3d 1 (Ky.2006). A palpable error that affects the substantial rights of the parties still only justifies relief where it has resulted in a "manifest injustice." RCr 10.26. The appellate court must "plumb the depths of the proceeding" to determine whether the error is so "manifest, fundamental and unambiguous" as to seriously threaten the "fairness, integrity or public reputation of judicial proceedings." *Martin*, 207 S.W.3d at 3–5. The error must be one that is "shocking or jurisprudentially intolerable." *Id.*

■■■ This exacting standard has not been met in this case. Even though the admission of Miller's prior acts of uncharged misconduct was error, their introduction was not so fundamental an error as to threaten Miller's entitlement to due process of law. *Id.* The jury also had before it evidence of Miller's three prior convictions on six counts of trafficking in a controlled substance in the first degree, the fact that he had been granted and violated parole on three separate occasions and evidence that he continued his illegal

drug activity each time he was released on parole. The jury was also aware of possible good time credit Miller could receive and the length of sentence he would actually be required to serve before becoming eligible for parole. The jury's recommended penalty was more likely the result of Miller's multiple felony convictions, his repeated parole violations, his continuous return to illegal activity, and the information concerning parole eligibility than it was the result of hearing Miller himself admit he sold drugs on more than just the six occasions for which he was convicted. Considering the entirety of the proceedings, we find there was no error so "shocking or jurisprudentially intolerable" as to seriously threaten the "fairness, integrity or public reputation of judicial proceedings." *Martin*, 207 S.W.3d at 4.

## II. The Presence of an Armed Corrections Officer Did Not Violate Miller's Rights to Due Process and a Fair Trial.

■■■ During the penalty phase, Miller was attended by an armed guard wearing a "Corrections" vest. The guard sat in a chair behind the defense table, on the same side of the bar as Miller and defense counsel, and accompanied Miller to the witness stand. Miller complains the constant presence of the guard deprived him of his right to a fair trial and due process. This issue was not preserved and is reviewed under the previously discussed palpable error standard.

The presence of a single armed guard did not render Miller's trial unfair or interfere with due process. Claims of excessive security are usually concerned with

---

4. RCr 10.26 provides, "A palpable error which affects the substantial rights of a party may be considered by the court ... even though insufficiently raised or preserved for

review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."

the potential prejudice to the defendant's presumption of innocence and ability to receive a fair trial. *E.g., Soto v. Commonwealth*, 139 S.W.3d 827 (Ky.2004). However, by this stage of the judicial process, Miller had been convicted and was incarcerated; he had long since lost the presumption of innocence. Well aware that Miller was serving time as a state inmate, the jury most likely considered the presence of the armed guard to be standard procedure rather than an indication that Miller was dangerous. As the United States Supreme Court has observed,

> [T]he presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable. Jurors may just as easily believe that the officers are there to guard against disruptions emanating from outside the courtroom or to ensure that tense courtroom exchanges do not erupt into violence. Indeed, it is entirely possible that jurors will not infer anything at all from the presence of the guards.

*Holbrook v. Flynn*, 475 U.S. 560, 569, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986). Moreover, apart from this guard, it appears from the record that the only other security presence in the courtroom was the bailiff. Courts have consistently upheld far more extensive security measures. *E.g., Holbrook*, 475 U.S. at 571, 106 S.Ct. 1340 (the presence of two bailiffs, four uniformed state troopers, and six uniformed Committing Squad officers did not deprive defendant of his right to a fair trial); *Hodge v. Commonwealth*, 17 S.W.3d 824 (Ky.1999) (the presence of two uniformed bailiffs, two uniformed state police officers, and several plainclothes officers did not create an impression that defendant was dangerous or guilty). The presence of the

guard was not erroneous, much less the cause of a manifest injustice.[5]

### III. The Trial Court Correctly Exercised its Discretion When it Denied Miller's Motion to Strike the Jury.

The Sixth Amendment right to a jury trial includes the right to a petit jury selected from a representative cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). This requirement does not mean, however, that "petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition." *Id.* at 538, 95 S.Ct. 692. The burden is on the defendant to establish a prima facie violation of the fair cross-section requirement by showing (1) the group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury-selection process. *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *Johnson v. Commonwealth*, 292 S.W.3d 889 (Ky.2009). It is not enough to merely allege a particular jury failed to represent the community. "A showing of underrepresentation must be predicated on more than mere guesswork. Such a showing requires competent proof (usually statistical in nature)." *United States v. Lara*, 181 F.3d 183, 192 (1st Cir.1999).

Miller claims the trial court erred when it denied his motion to strike the jury for failure to represent a cross-sec-

---

5. We note that whether an armed guard should accompany the defendant to the witness stand is a determination to be made by the trial judge. This determination should be made on a case-by-case basis.

tion of the community where none of the thirty-seven people called for the voir dire panel was African American and the eventual jury was composed entirely of Caucasians. The sole evidence provided by Miller was a reference to the 2010 U.S. Census indicating African Americans comprise 3.4% of Adair County, Kentucky. This was not sufficient to establish a prima facie violation of the fair cross-section requirement. While African Americans do constitute a distinctive group for the purpose of jury selection, *Rodgers v. Commonwealth*, 285 S.W.3d 740 (Ky.2009), Miller failed to provide any data concerning past Adair County jury panels to establish African Americans are unfairly and unreasonably underrepresented. Nor did Miller provide any proof that the alleged underrepresentation is due to systematic exclusion. Absent these showings, the trial court did not err when it denied Miller's motion. *E.g., Johnson v. Commonwealth*, 292 S.W.3d at 894, 895 (holding the defendant failed to provide sufficient proof to establish a violation of the fair cross-section requirement where the defendant's evidence consisted solely of a citation to the World Almanac that African Americans comprised 13% of the area's population).

### CONCLUSION

Considering the entirety of the proceedings, the introduction of Miller's prior uncharged acts of misconduct during the penalty phase did not result in a manifest injustice. Nor was it palpable error for one armed guard to closely accompany Miller during the proceedings, where Miller was in the custody of the state, was no longer presumed innocent and there was little additional security in the courtroom. Finally, the trial court properly overruled Miller's motion to strike the jury because Miller failed to provide sufficient proof to establish a prima facie violation of the fair

cross-section requirement. The Judgment and Sentence of the Adair Circuit Court is affirmed.

All sitting. All concur.