**COMMONWEALTH of Kentucky,**
**Petitioner**

v.

**Honorable Olu A. STEVENS,**
**Judge, Jefferson Circuit**
**Court, Respondent**

and

**Charles A. Evans, Jr., Real**
**Party in Interest**

NO. 2016–CA–000177–OA

Court of Appeals of Kentucky.

RENDERED: MARCH 16, 2016; 12:00 P.M.

Counsel for Petitioner: Andrew Beshear, Attorney General, Dorislee Gilbert, Louisville, Kentucky

Counsel for Respondent: Honorable Olu Stevens, Louisville, Kentucky

Counsel for Real Party in Interest: Bruce P. Hackett, Daniel T. Goyette, Louisville, Kentucky

BEFORE: DIXON, KRAMER, AND MAZE, JUDGES

1. Kentucky Rules of Civil Procedure.

2. At some point during the proceedings, the respondent judge also sealed the circuit court record and imposed a gag order on all parties to the case. The Commonwealth does not raise this issue in its writ petition; however, we are compelled to voice our belief that the imposition of a gag order was inappropriate under the circumstances. The law rightly favors access to court records, and this access shall only be limited when "there is a substantial probability that the right ... to a fair trial ... will be otherwise irreparably dam-

*OPINION AND ORDER*

MAZE, JUDGE:

This case is before us on a petition for a writ of prohibition pursuant to CR[1] 76.36 asking the Court to prohibit the respondent judge from dismissing a jury panel which the respondent judge believed was in violation of the fair cross-section requirement for a properly constituted jury. With its petition, the Commonwealth also filed a motion for intermediate relief asking us to stay the proceedings below pending our decision on the writ. Intermediate relief was granted on February 11, 2015.

The underlying facts are as follows: on February 9, 2016, a jury panel of forty-one members reported to Division Six of the Jefferson Circuit Court. Following general questions about the panel members' ability to serve, but before the parties began *voir dire*, real party in interest (Evans) objected to the panel on the grounds that it did not represent a fair cross-section of the community: of the forty-one members, only three appeared to be African American. After hearing testimony from the jury administrator for the Jefferson County Circuit Court and from the Chair of the Racial Fairness Commission (Court of Appeals Judge Denise Clayton), the trial court nevertheless agreed with Evans that the panel was not representative and granted Evans's motion to dismiss it and have a second panel drawn.[2]

aged." *Roman Catholic Diocese of Lexington v. Noble*, 92 S.W.3d 724, 739 (Ky. 2002) (internal citations and quotations omitted). "[T]he decision to issue a 'gag order' should follow careful consideration of alternative means of protecting a litigant's right to a fair trial[.]" *Id.* The record reflects no such consideration, nor any indication that the respondent judge entered the gag order out of his concern for Evans's right to a fair trial. To say the least, the respondent judge's quickness and eagerness to close these proceedings to the public is of grave concern to this Court.

The Commonwealth objected on the grounds that Evans had not met his burden to show that the fair cross-section requirement had been violated. Evans, the prosecution argued, had not shown that there was systematic exclusion of a protected class because jury selection is random, and the number of minorities on any given panel varies. Evans' attorneys countered that the system itself is inherently discriminatory because the rolls from which jurors are summoned may exclude certain groups, and too often those who are summoned simply fail to report for service.

At the Commonwealth's request, the court stayed dismissal of the jury panel and continued the proceedings until 10:00 a.m., February 11, 2016, in order to allow the Commonwealth to seek relief in this Court. The Commonwealth filed its petition and motion for intermediate relief on February 10, 2016.

This Court granted a stay of the proceedings pending our decision on the petition for a writ. That order was faxed to the parties and the circuit court judge at or about 7:30 a.m. on February 11, 2016. The jury panel had been told to report to circuit court at 10:00 a.m. that same day, which they did. The Commonwealth also appeared at 10:00 a.m., intending to ask the respondent judge to give the jurors a date, about six weeks in the future, to report back for trial. However, the prosecutor representing the Commonwealth left the courtroom for a few minutes, and when he returned, he discovered the jurors were gone. The sheriff later informed Evans'

attorneys that the respondent judge had dismissed the panel and sent them back to the jury pool.[3] The jury pool administrator subsequently sent the jurors home for the day.

Because the assigned judge no longer had jurisdiction to hear the case,[4] at the request of the Commonwealth, the Chief Regional Circuit Judge of the Jefferson Circuit Court held a hearing on the Commonwealth's motion to reassemble the original jury panel. Although understanding that this Court intended to stay proceedings, including staying the dismissal of the jury panel, the Chief Circuit Judge found that, in practice, reassembling the panel was not possible; the members had been sent back to the jury pool and subsequently sent home. The Chief Circuit Judge noted that the panel may not have been admonished that they could not gather information about the case or discuss it with others, which potentially made them ineligible to serve. Furthermore, the panel had only one day left of jury service, and many of them may already have been released from service entirely. Finally, the Chief Circuit Judge noted that no specific date for another trial, nor any specific division of the Jefferson Circuit Court (should the current judge be disqualified), could be determined with any certainty. The Chief Circuit Judge therefore concluded that holding the panel members over would create an undue burden on them, and he denied the Commonwealth's motion. The original jury panel was neither reassembled nor retained. In the present original action, the Commonwealth now

---

**3.** There is apparently no video recording of this event in the circuit court record.

**4.** On February 10, 2016. the same day it filed its petition for a writ, the Commonwealth also filed an affidavit asking the Chief Justice of the Kentucky Supreme Court to disqualify the circuit court judge. *See* Kentucky Revised

Statutes (KRS) 26A.020; *Jackson v. Commonwealth*, 806 S.W.2d 643, 645 (Ky. 1991) ("[A]fter the filing of an affidavit to disqualify, the trial judge is without further jurisdiction to proceed in the matter until the Chief Justice acts or until a special judge is designated").

seeks a writ of prohibition against the respondent judge's actions.

We begin by noting our displeasure at the apparent failure to abide by an order of this Court. The record is unclear, and the facts are contested, regarding who instructed the jury to return to the jury pool, effectively discharging them from service in this case. However, the fact remains that it was done when it should not have been; and it was done in contravention of this Court's order remitted to respondent judge's trial division hours before. Regardless of who released the jury, these facts are deeply disconcerting and disruptive to our system of laws.

■ The proper administration of justice—for the Commonwealth and defendant alike—requires a lower court to follow the direct orders issuing from a higher court. If a lower court can merely ignore the orders from a higher court directing a specific action, chaos ensues. This legal precept is so fundamental in our jurisprudence that we can scarcely locate authority stating it. It is a precept that should not have to be stated; but we will do so anyway. This Court means what it says, and it expects—indeed, it demands—that circuit and district courts will comply with its orders. With that, we proceed to the substantive issue before us.

■ Real party in interest Evans asks us to dismiss the Commonwealth's petition for a writ as moot, because the respondent judge dismissed the jury panel the Commonwealth sought to preserve and because that panel cannot possibly be reassembled. Ordinarily, this Court dismisses an action when no relief can be given to the parties below. "The classic occurrence which necessitates a court's abrogation of jurisdiction for mootness is a change in circumstance in the underlying controversy which vitiates the vitality of the action." *Commonwealth v. Hughes,*

873 S.W.2d 828, 830 (Ky. 1994). There are exceptions to the mootness doctrine. Cases which are "capable of repetition, yet evading review," are those where the challenged action is too short in duration to be fully litigated prior to its cessation or expiration and there is a reasonable expectation that the same complaining party will be subjected to the same action again. *Philpot v. Patton,* 837 S.W.2d 491 (Ky. 1992).

While the dismissal of the original jury panel renders the issue moot in this particular case, we are obligated to address this broader issue. Because a jury panel in Jefferson County serves for only two weeks, fully litigating whether a circuit judge can dismiss panels he finds objectionable simply cannot be accomplished in such a short time. In fact, this is not the first time the respondent judge has dismissed panels he found objectionable; and, there is more than a reasonable expectation that the Commonwealth will be subjected to the same action again and that this Court will be asked to review the same issue after a jury panel has been forever released from the control of the court.

■ Another exception to the mootness doctrine applies. Kentucky law clearly establishes a "public interest" exception to mootness. To avail himself of this exception, a party must clearly show: (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question. *Morgan v. Getter,* 441 S.W.3d 94, 102–03 (Ky. 2014), quoting *In re Alfred H.H.,* 233 Ill.2d 345, 331 Ill.Dec. 1, 910 N.E.2d 74 (2009).

The facts and circumstances of this case easily satisfy these elements. Jury service is inherently public in nature. Further-

more, as a consequence of the respondent judge's past actions, as well as his actions in this case, there is an apparent and immediate need among the Jefferson County bench and bar for guidance on this important matter until our Supreme Court certifies the law within the foreseeable future.

Owing to these exceptions, we conclude that the issue the Commonwealth raised in its petition for a writ of prohibition, though moot, must be addressed. Having determined this, we now turn to the merits of the petition.

■■■■ The standard governing the issuance of an extraordinary writ is well established:

> A writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Hoskins v. Maricle*, 150 S.W.3d 1,10 (Ky. 2004). The Commonwealth argues that, although the trial court is acting within its jurisdiction, it is doing so erroneously. It further argues that the issue falls within the "certain special cases" category of writs wherein "[t]he requirement of 'great and irreparable injury' [is] treated with a degree of flexibility permitting intervention if the administration of justice, [rather than the petitioner], would suffer great and irreparable injury." *Wal–Mart Stores, Inc. v. Dickinson*, 29 S.W.3d 796, 801 (Ky. 2000), quoting *National Gypsum Co. v. Corns*, 736 S.W.2d 325, 326 (Ky. 1987).

Real party in interest Evans (aside from arguing the issue is moot) argues that the Commonwealth has a remedy by appeal and that the petition fails on its merits. The respondent judge asserts that he is well within his discretion to dismiss a jury panel which does not reflect a fair cross-section of the community, and that he may continue to draw panels from the jury pool until his expectations are met.

■■■■ If there is any reason a writ should issue in this case, it must be to protect the orderly administration of justice under the "certain special cases" exception to the writ requirements:

> [I]n certain special cases this Court will entertain a petition for prohibition in the absence of a showing of specific great and irreparable injury to the petitioner, provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, and correction of the error is necessary and appropriate in the interest of orderly judicial administration. It may be observed that in such a situation the court is recognizing that if it fails to act the administration of justice generally will suffer the great and irreparable injury.

*Wal–Mart Stores*, 29 S.W.3d at 801. These "certain special cases" are rare: "[t]his avenue to mandamus review, however, is meant to be a 'rare exception[ ] . . . reserved for exceptional cases [where] the remedy may be invoked as a shield from injustice . . . to preserve the orderly administration of the laws.'" *Inverultra, S.A. v. Wilson*, 449 S.W.3d 339, 348–49 (Ky. 2014), quoting *Cox v. Braden*, 266 S.W.3d 792, 797 (Ky. 2008). The administration of justice is indubitably at issue here. Although this relieves the Commonwealth of the requirement of showing immediate and irreparable injury, in seeking a writ under the "certain special cases" exception, the Commonwealth still must

show that the lower court is acting erroneously and there is no adequate remedy by appeal or otherwise.

We agree that the Commonwealth has no remedy by appeal or otherwise. There is no written order from which an interlocutory appeal can be taken. *See Commonwealth v. West*, 147 S.W.3d 72, 74 (Ky. App. 2004), *as modified* (Oct. 1, 2004). Nor can the Commonwealth seek a remedy pursuant to CR 76.37(10), which allows certification of the law from "a final order adverse to the Commonwealth." *See Commonwealth v. Bailey*, 71 S.W.3d 73 (Ky. 2002), *as amended* (Apr. 29, 2002) (the Commonwealth can seek certification "only after 'a judgment of acquittal' ").[5] The remaining question before us, therefore, is whether the trial court erred such that this Court's intervention is needed to preserve the "orderly administration of the laws."

In *Miller v. Commonwealth*, 394 S.W.3d 402 (Ky. 2011), the Kentucky Supreme Court, citing United States Supreme Court precedent, set out what a defendant must show in order prove a violation of the fair cross-section requirement:

> The Sixth Amendment right to a jury trial includes the right to a petit jury selected from a representative cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). This requirement does not mean, however, that "petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition." *Id.* at 538, 95 S.Ct. 692. The burden is on the defendant to establish a prima facie violation of the fair cross-section requirement by showing (1) the group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury-selection process. *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *Johnson v. Commonwealth*, 292 S.W.3d 889 (Ky. 2009). It is not enough to merely allege a particular jury failed to represent the community. "A showing of underrepresentation must be predicated on more than mere guesswork. Such a showing requires competent proof (usually statistical in nature)." *United States v. Lara*, 181 F.3d 183, 192 (1st Cir. 1999).

*Id.* at 409; *see also Mash v. Commonwealth*, 376 S.W.3d 548 (Ky. 2012). *Miller* continues by addressing what constitutes competent proof:

> Miller claims the trial court erred when it denied his motion to strike the jury for failure to represent a cross-section of the community where none of the thirty-seven people called for the voir dire panel was African American and the eventual jury was composed entirely of Caucasians. The sole evidence provided by Miller was a reference to the 2010 U.S. Census indicating African Americans comprise 3.4% of Adair County, Kentucky. This was not sufficient to establish a prima facie violation of the fair cross-section requirement. While African Americans do constitute a distinctive group for the purpose of jury selection, *Rodgers v. Commonwealth*,

---

**5.** It should also be noted that the Commonwealth has been granted certification of the law by the Kentucky Supreme Court, pursuant to CR 76.37(10), regarding dismissal of jury panels that appear not to meet the fair cross-section requirement for a properly constituted jury. *See Commonwealth v. Doss*, 2015–SC–000018.

285 S.W.3d 740 (Ky. 2009), Miller failed to provide any data concerning past Adair County jury panels to establish African Americans are unfairly and unreasonably underrepresented. *Nor did Miller provide any proof that the alleged underrepresentation is due to systematic exclusion.*

*Id.* at 409–10. (emphasis added). In short, this has been the expressed law of the Commonwealth for at least four years, and it remains so today. This court, and the courts below, must follow this law until the Supreme Court instructs us otherwise.

▪ Evans clearly met the first prong of this test. There is no question that African Americans are a distinctive group in the Jefferson County community. However, the record demonstrates that Evans, upon whom the burden solely rested, clearly did not meet the third prong of *Miller.* "The point at which an accused is entitled to a fair cross-section of the community is when the names are put in the box from which the panels are drawn...." *Stanford v. Commonwealth,* 734 S.W.2d 781, 785 (Ky. 1987), quoting *Pope v. United States,* 372 F.2d 710, 725 (8th Cir. 1967), vacated on other grounds, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968). "A defendant may demonstrate systematic exclusion by providing statistical information showing that a particular group was underrepresented in a county's jury panels *over a period of time.*" *Mash,* 376 S.W.3d at 552, citing *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Like the movant in *Miller,* Evans presented no such data regarding past jury panels.

▪ The only testimony that the trial court heard regarding systematic exclusion was that selection for jury service is random. The point at which the "names are put in the box" in Jefferson County is when the jurors assemble in the jury pool on the first day of jury service. The jury administrator testified that this process intentionally ensures that she does not know the racial make-up of either the jury pool or the individual jury panels. Without knowing the demographics of the potential jurors, one cannot go through the list and systematically exclude any particular group.

The respondent judge took the position that Evans, and other defendants, could never meet their burden under *Miller* because the Commonwealth, under this system, does not keep records of the race of potential jurors, nor does it record that information until jurors actually report for jury duty. However, the absence of such records does not support an inference that the Commonwealth is systematically excluding African Americans from the jury pool. Likewise, the failure to ensure that jurors report for jury duty, while unfortunate, does not amount to a deliberate attempt to exclude any particular group. To suggest otherwise, as the respondent judge has, is to improperly shift the burden of proof to the Commonwealth. This being the case, and Evans having presented no affirmative evidence demonstrating systematic exclusion, the trial court acted erroneously and against current United States Supreme Court and Kentucky Supreme Court precedent when he dismissed the jury panel. Additionally, the trial court ignored the written order to stay the proceedings entered and distributed by the Honorable Allison Jones three hours earlier.

▪ At its core, the matter before us concerns what the law is and whether the respondent judge followed it. Until our Supreme Court says otherwise, the law requires that the pool from which a jury panel is selected represent a fair cross-section; however, it does not require that the jury panel itself accurately reflect

the community. The law further requires that a moving party show, *inter alia,* systematic exclusion of a distinct and underrepresented demographic. Evans, as the real party in interest, failed to demonstrate this. Yet, the respondent judge, in contravention of the law and an order of this Court, dismissed the jury panel. This practice must cease unless or until the law of this Commonwealth changes.

For the foregoing reasons, we hereby GRANT the petition for a writ. Respondent judge is ORDERED not to dismiss future jury panels unless the affirmative testimonial requirements of *Miller* are met, leading the court to conclude that there was evidence of systematic exclusion. To be clear, the respondent judge is not to dismiss future jury panels in criminal cases merely because he believes they do not represent a fair cross-section unless a criminal defendant—not the Commonwealth—carries his burden under *Miller,* or until further direction from the Kentucky Supreme Court.

Finally, because we have addressed the merits of the petition without relying on the Commonwealth's tendered reply to Evans' response to the petition, we hereby ORDER that the motion to file a reply be, and hereby is, DENIED. We further ORDER that Evans' motion to be heard on intermediate relief, and his motion to reconsider, be, and hereby are, DENIED.

ALL CONCUR.