# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

2016-SC-000027-MR

JAMAL NANCE                      APPELLANT

ON APPEAL FROM MCCRACKEN CIRCUIT COURT
V.          HONORABLE TIMOTHY JON KALTENBACH, JUDGE
NO. 15-CR-00025

COMMONWEALTH OF KENTUCKY             APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

Jamal Nance appeals as a matter of right from a judgment of the McCracken Circuit Court convicting him of first-degree burglary, second-degree wanton endangerment, convicted felon in possession of a handgun, first-degree persistent felony offender, and sentencing him to a total of twenty-five years' imprisonment. This case arises from events occurring on November 13, 2014, when Nance entered the home of Miranda Williams without permission, brandished two guns, and engaged in an altercation with occupants of the home at the time, which included Williams, DeAnthony Woods and Javielle Winston (and her four children). Detective Ryan Conn was the lead investigator on the case and conducted an interview with the three adult

witnesses immediately after the incident, which was audio recorded. At trial,

Det. Conn, Williams, Winston, and Woods were called to testify for the

Commonwealth. The audio recording of the interview was played for the jury.

On appeal, Nance raises five claims of error, only one of which has merit.

With respect to the meritorious claim, we reverse the portion of the trial court's

judgment directing Nance to pay restitution in the amount of $750, and

remand with instructions for the trial court to conduct a hearing on the issue

of restitution, within the parameters outlined in *Jones v. Commonwealth*, 382

S.W.3d 22 (Ky. 2011). Nance's five claims of error are addressed below.

## ANALYSIS

I. **The trial court did not abuse its discretion by declaring the Commonwealth's first witness to be a hostile witness and by allowing the Commonwealth to ask leading questions.**

Nance argues the trial court abused its discretion by declaring the

Commonwealth's first witness, Williams, to be a hostile witness pursuant to

KRE[1] 611, and by allowing the Commonwealth to ask leading questions on

direct examination. KRE 611(c) provides:

> Leading questions should not be used on the direct
> examination of a witness except as may be necessary
> to develop the witness' testimony. Ordinarily leading
> questions should be permitted on cross-examination,
> but only upon the subject matter of the direct
> examination. When a party calls a hostile witness, an
> adverse party, or a witness identified with an adverse
> party, interrogation may be by leading questions.

---

[1] Kentucky Rules of Evidence.

2

We review a trial court's evidentiary rulings for an abuse of discretion. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* at 581.

The record shows that during direct examination of Williams, the Commonwealth had difficulty eliciting responses and getting her to speak loudly enough so that the jury could hear her. At the beginning of direct examination, the Commonwealth established that Williams had been subpoenaed to testify in court. During the questioning that followed, the Commonwealth and the trial court continually asked Williams to raise her voice and to speak into the microphone so that the jury could hear her responses. When asked if they could hear Williams' responses, the jurors replied that they could not. At one point, the trial court turned up the microphone and directed Williams to move closer to the microphone and speak up. Williams repeatedly stated that she was unable to recall any details of the incident, and that she did not want to be in court testifying.

Nance objected five times during the course of the Commonwealth's direct examination of Williams, on grounds that the Commonwealth was improperly leading the witness. The trial court overruled four of Nance's objections, citing KRE 611 as authority. During a bench conference, the trial court stated that it had found Williams to be a hostile witness and leading questions were necessary for the Commonwealth to draw responses from her.

3

Upon review of the record, we conclude that the trial court did not abuse its discretion by declaring Williams to be a hostile witness and by allowing the Commonwealth to ask leading questions to develop her testimony. Williams was unable to recall any details of the incident and stated that she did not want to be in court testifying. She was wholly uncooperative. As a result, this claim of error fails.

## II. The trial court did not abuse its discretion by allowing the Commonwealth to use the transcript of the witnesses' interviews during direct examination.

Nance contends the trial court erred by allowing two of the Commonwealth's witnesses, Williams and Winston, to read from the written transcript of their interview with police, rather than answering the Commonwealth's questions based on their memory. Interestingly, Nance objected to the witnesses reading from the transcript during the Commonwealth's direct examination, but did not object to the admission of the transcript into evidence and in fact later used the transcript during cross-examination.

As discussed above, the Commonwealth asked Williams on direct examination what occurred on the day in question – she was reluctant to answer. The Commonwealth requested that Williams describe the events in her own words, but if she could not, then they would go over the transcript of the statement she had provided to police. To avoid having to answer, Williams asked the Commonwealth to just read the transcript of her statement. At that point, the trial court directed Williams to answer the Commonwealth's

4

questions to the best of her ability. She said that she was unable to recall any details of the incident; eventually, she read from the transcript of her interview with police.

Like Williams, Winston was also a difficult and uncooperative witness. She stated that she did not remember anything about the incident, and that all she knew was what was written on the interview transcript. She was completely unable, or unwilling, to testify as to what occurred on the day in question. To develop her testimony for the record, the Commonwealth read from her interview transcript and asked Winston if she made certain statements. The trial court directed Ms. Winston to testify based on her memory; Winston said she was unable to do so since she could not recall anything about the incident.

Nance objected to the Commonwealth's approach, asserting that the Commonwealth may only refresh the witness's recollection, not read from the witness's transcript. Nance argued that the transcript had not been certified to his knowledge, he was unware the transcript existed, and the witness should not be allowed to read from an unofficial transcript. In response, the Commonwealth stated that Det. Conn had reviewed the transcript and the audio recording of the interview to attest to the transcript's accuracy. The Commonwealth asserted that it was allowed to ask the witness whether she made certain statements, especially when the witness was unable to recall. The trial court ruled that the witness needed to testify based on her memory, but if she was unable to do so, the Commonwealth may refresh her recollection

5

using the interview transcript. To that extent, the trial court sustained Nance's objection.

The Commonwealth proceeded to ask Winston whether she made certain statements, as reflected in the interview transcript. At the conclusion of its direct examination, the Commonwealth moved to admit the interview transcript into evidence, based on the witnesses' failure to recall anything about the incident. Nance had no objection, and asked permission to use the interview transcript during cross-examination, to which the Commonwealth had no objection. Nance clarified that he had previously reviewed the audio recording of the witnesses' interview, but had not reviewed the interview transcript.

Nance now asserts that the trial court abused its discretion by allowing the Commonwealth to use the interview transcript. Again, this Court reviews a trial court's evidentiary rulings for an abuse of discretion. *Thompson,* 11 S.W.3d at 577.

With respect to a witness's prior statement, both KRE 612 and KRE 803(5) come into play. KRE 612 addresses the use of a writing to refresh the memory of a witness and provides as follows:

> Except as otherwise provided in the Kentucky Rules of Criminal Procedure, if a witness uses a writing during the course of testimony for the purpose of refreshing memory, an adverse party is entitled to have the writing produced at the trial or hearing or at the taking of a deposition, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony, the court shall examine the writing in camera, excise any portions not so related, and order delivery of the

6

remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal.

"For a witness's memory to be refreshed under this rule, the offering party must show that the witness once had personal knowledge of the event about which testimony is sought and . . . the witness's memory of that event needs to be revived." *Martin v. Commonwealth*, 456 S.W.3d 1, 14 (Ky. 2015) (internal quotations omitted). "[W]hen a witness refreshes her memory under this rule, the testimony elicited thereafter is the product of the refreshed memory, not the writing used to refresh it. As a result, the document itself is not admissible into evidence, and the hearsay rule does not apply." *Id.* at 15 (internal quotations omitted).

If the writing fails to refresh the witness's memory for testimony, the court may proceed under KRE 803(5), which is "an exception to the bar on admissibility of hearsay evidence. . . . [and] operates to allow the content of previously written recordings to be admitted as substantive evidence to prove the truth of the matter asserted in the recording." *Martin*, 456 S.W.3d at 15 (internal footnote omitted).

KRE 803(5) states:

> Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but

> may not be received as an exhibit unless offered by an adverse party.

"For admission under this rule to be appropriate, the offering party must show the writing was made or adopted by the witness as an accurate reflection of personal knowledge the witness once possessed, and the witness no longer adequately remembers the matter to fully and accurately testify." *Martin*, 456 S.W.3d at 15. In other words, "KRE 803(5) applies when the witness is unable to testify from present memory even after being exposed to the recorded recollection. In that instance, the recorded recollection is admissible, but only after verification of its accuracy." *Berrier v. Bizer*, 57 S.W.3d 271, 277 (Ky. 2001).

Neither Williams nor Winston were able to recall the events that occurred on the day in question, and were unable to testify based on their memory. As a result, the Commonwealth was permitted to read statements from the interview transcript and ask whether they made certain statements. Regarding the admission of the interview transcript into evidence, we note that Nance did not object and in fact later used the transcript during cross-examination. More importantly though, for purposes of admissibility, the Commonwealth recalled Det. Conn as a witness, and he verified the transcript's accuracy as required by KRE 803(5). Det. Conn testified that he had listened to the audio recording of the interview with the three witnesses and had reviewed the proposed transcript to verify its accuracy. The Commonwealth reviewed portions of the transcript with him (portions to which it had referred when questioning the witnesses), and Det. Conn confirmed that the witnesses had in fact stated what

8

was reflected in the transcript. Accordingly, based on our review of the record, the trial court did not abuse its discretion by admitting it the transcript into evidence. This claim of error fails as well.

### III. Nance waived his objection to the playing of the audio recording of the witnesses' interviews.

At the conclusion of Det. Conn's testimony, the Commonwealth stated its intention to play the audio recording of the interviews with the three adult witnesses. Nance had no objection. The trial court asked Nance three times whether he had an objection; Nance responded no each time.

Nance now claims that playing the audio recording was 1) cumulative and inadmissible as a prior consistent statement, since the witnesses' interview transcript had already been admitted into evidence; and 2) prejudicial, since portions of the audio recording were inaudible. In response, the Commonwealth points out that Nance waived this objection and cannot now challenge his trial counsel's strategy on direct appeal. We agree. *See Tackett v. Commonwealth*, 445 S.W.3d 20, 28-29 (Ky. 2014) (when a party specifically waives an objection, the party cannot claim on appeal that the trial court erroneously admitted the evidence).

That said, even if we were to consider Nance's argument under the RCr[2] 10.26 palpable error standard of review, "reversal is warranted if a manifest injustice has resulted from the error, which requires a showing of the probability of a different result or error so fundamental as to threaten a

---

[2] Kentucky Rules of Criminal Procedure.

9

defendant's entitlement to due process of law." *Jones*, 382 S.W.3d at 29 (internal quotations omitted). KRE 801A provides for admission of a witness's prior statement if the witness testifies at trial and the prior statement is "[c]onsistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive[.]" KRE 801A(a)(2). Nance argues that the audio recording of the witnesses' interview is a prior consistent statement, and therefore is inadmissible since not offered to rebut a charge of recent fabrication or improper influence or motive. Nance asserts that the audio recording served only to bolster the testimony of the witnesses and further, that it should have been excluded as unreliable since portions of it were inaudible.

However, even if playing the audio recording was improper under KRE 801A, it did not result in manifest injustice so as to change the outcome of the trial or otherwise deprive Nance of his entitlement to due process of law. While some portions of the recording are inaudible, large portions of it are audible, enough for a transcript of the witnesses' statements to be produced from it. Thus, we do not believe that the audio recording was unreliable or that reversal under the palpable error standard is warranted.

## IV. The trial court properly overruled Nance's objection to the jury panel's composition.

Nance argues that the jury panel was constitutionally defective due to its racial composition. Specifically, Nance assets that the method utilized in the development of the jury pool resulted in a disproportionate representation of minorities and amounts to structural error. We disagree.

10

On the morning of trial, Nance objected to the composition of the jury panel. Nance counted five or six African Americans on the panel of 80 prospective jurors; he stated that he thought African Americans composed approximately 11% of the population in McCracken County and that he did not believe the representation of African Americans on the jury panel (6.25%-7.5%) represented a fair cross-section of the community. Nance claimed that he could be prejudiced as a result.

In response, the Commonwealth noted that the jury panel was composed by computer, and that the 11% demographic cited by Nance was not a matter of record. Even if the 11% figure was accurate, the Commonwealth asserted that a panel comprised of five or six African Americans out of a total of 80 jurors was fairly representative of the community.

The trial court overruled Nance's objection, noting that the jury list is sent from the clerk's office and that the court did not have a say in the jury pool. The trial court did not recall excusing any African Americans during jury orientation and noted that if a deficiency in the jury makeup existed, which the court did not believe was the case, such deficiency was not due to any action taken by the court.

We will review the trial court's ruling on Nance's objection for an abuse of discretion. *Thompson*, 11 S.W.3d at 577. This Court has explained the showing that must be made to succeed on a challenge to the racial composition of a jury panel:

> The Sixth Amendment right to a jury trial includes the
> right to a petit jury selected from a representative

11

cross-section of the community. *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). This requirement does not mean, however, that "petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition." *Id.* at 538, 95 S.Ct. 692. The burden is on the defendant to establish a prima facie violation of the fair cross-section requirement by showing (1) the group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury-selection process. *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *Johnson v. Commonwealth,* 292 S.W.3d 889 (Ky. 2009). It is not enough to merely allege a particular jury failed to represent the community. "A showing of underrepresentation must be predicated on more than mere guesswork. Such a showing requires competent proof (usually statistical in nature)." *United States v. Lara,* 181 F.3d 183, 192 (1st Cir. 1999).

*Miller v. Commonwealth,* 394 S.W.3d 402, 409 (Ky. 2011).

Nance claims he was denied a fair trial due to the jury panel composition; however, the sole evidence he provided was an unsupported reference to a McCracken County census indicating that African Americans represented 11% of the county's population. Nance failed to demonstrate that the alleged underrepresentation of African Americans on his jury panel was due to systematic exclusion, and has not specified any deficiency in Kentucky's current method of jury selection that would amount to structural error. This Court has repeatedly held that "mere citation to census data, without any other information, is not enough to show underrepresentation or systematic

12

exclusion." *Mash v. Commonwealth*, 376 S.W.3d 548, 552 (Ky. 2012) (citing *Miller*, 394 S.W.3d at 410) (holding that defendant had not established that African Americans were unreasonably underrepresented when his only evidence on the issue was a reference to the 2010 U.S. Census); *Johnson*, 292 S.W.3d at 894-95 (holding that defendant failed to provide sufficient proof to establish a violation of the fair cross-section requirement where the defendant's evidence consisted solely of a citation to the World Almanac that African Americans comprised 13% of the area's population). Moreover, "a trial judge does not have the discretion to dismiss a randomly selected jury panel which, despite it[s] unrepresentative appearance, was not shown to have been drawn from a jury pool that failed to reflect a fair cross section of the community[.]" *Commonwealth v. Doss*, 510 S.W.3d 830, 837 (Ky. 2016). Absent the requisite showing by Nance, the trial court did not abuse its discretion by overruling his objection to the jury panel's composition.

## V.     The restitution award warrants scrutiny.

Lastly, Nance asserts that the trial court erred by ordering him to pay restitution in the amount of $750. Since Nance did not preserve this issue below, we will review it for palpable error pursuant to RCr 10.26.

Nance avers that the trial court's decision to order him to pay restitution without conducting a hearing violated his due process rights, including prior notice of the claim and a meaningful opportunity to be heard. Nance asserts that such deprivation seriously affected the fairness of the proceedings so as to warrant reversal under the palpable error standard. We agree.

13

This Court has held that "basic due process standards must be applied when restitution is assessed and imposed as one of the sentencing alternatives under KRS Chapter 532." *Jones*, 382 S.W.3d at 31. The Commonwealth concedes that the trial court imposed the restitution award without conducting a hearing, the record is unclear as to why restitution was awarded, and why the amount awarded was $750. The Commonwealth admits that in light of the foregoing, Nance's argument that the trial court's restitution award runs afoul of the *Jones* decision appears to be well-founded and his demand for a hearing well-taken.

We agree with the parties that the trial court's assessment and imposition of restitution in this case violated Nance's right to due process and amounts to palpable error. Accordingly, we reverse the portion of the judgment that imposes restitution and remand to the trial court with directions to conduct an adversarial hearing that includes the following protections:

> • reasonable notice to the defendant in advance of the sentencing hearing of the amount of restitution claimed and of the nature of the expenses for which restitution is claimed; and
>
> • a hearing before a disinterested and impartial judge that includes a reasonable opportunity for the defendant, with assistance of counsel, to examine the evidence or other information presented in support of an order of restitution; and
>
> • a reasonable opportunity for the defendant with assistance of counsel to present evidence or other information to rebut the claim of restitution and the amount thereof; and
>
> • the burden shall be upon the Commonwealth to establish the validity of the claim for restitution and

14

the amount of restitution by a preponderance of the evidence, and findings with regard to the imposition of restitution must be supported by substantial evidence. Notwithstanding the foregoing recitation of the minimal due process requirements, we reiterate that the trial courts retain broad discretion to manage the proceedings as needed to implement the mandate of KRS 532.032 in a manner that protects constitutional due process and achieves substantial justice.

*Jones,* 382 S.W.3d at 32.

"Notwithstanding the foregoing recitation of the minimal due process requirements, we reiterate that the trial courts retain broad discretion to manage the proceedings as needed to implement the mandate of KRS 532.032 in a manner that protects constitutional due process and achieves substantial justice." *Id.*

## VI.    Conclusion.

The judgment of the McCracken Circuit Court is affirmed in part, and reversed in part, and this case is remanded with instructions for the trial court to conduct a hearing on the issue of restitution, in accordance with the parameters outlined in *Jones v. Commonwealth,* 382 S.W.3d 22 (Ky. 2011).

All sitting. All concur.

COUNSEL FOR APPELLANT:

Shannon Renee Dupree
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Jeffrey Allan Cross
Assistant Attorney General

16