# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 14, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

### 2016-SC-000627-MR

ZAYER ADAMS                                                                 APPELLANT

ON APPEAL FROM CHRISTIAN CIRCUIT COURT
V.                    HONORABLE ANDREW C. SELF, JUDGE
NOS. 16-CR-000235 AND 16-CR-000379

COMMONWEALTH OF KENTUCKY                                    APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

On the morning of February 4, 2016, Appellant, Zayer Antonio Adams, was arguing with his ex-wife, Stephanie Shakoor, at her residence. Shakoor called her brother, Kenny Green, to remove Adams from her apartment. Knowing Adams and Shakoor had a tumultuous relationship, Green went to the back door of his sister's apartment to check on her. Nobody answered. Adams then appeared in the window and told Green that Shakoor was "all right," but did not answer the door. Green continued to knock and yell for her.

Worried neighbors called the police. Upon arrival, the officers saw through the apartment window that a fire was starting on the stove, and

proceeded to break down Shakoor's door to rescue those inside. As they broke down the back door, Adams fled through the front door.

He left Shakoor in her apartment, naked and beaten. Before being taken to the hospital, Shakoor told the police that Adams had restrained, beaten, kicked, and dragged her around by her hair. After hospitalization for abrasions and contusions resulting from the beating, Shakoor continued to suffer physical and emotional pain.

Adams was arrested and charged with second-degree Assault, first-degree Fleeing or Evading Police, and first-degree Unlawful Imprisonment. He was also charged with being a Persistent Felony Offender.

At trial, the jury found Adams guilty of all charges presented and recommended a fifteen-year sentence for Assault and a seven-year sentence for Unlawful Imprisonment, to run consecutively. At sentencing, Adams also unconditionally pled guilty to other charges not tried before the jury, and received a three-year sentence on those counts to be served concurrent with his trial convictions. However, to comply with KRS 532.110(1)(c), the trial court imposed a concurrent twenty-year sentence for all the convictions.

Adams now appeals his jury trial convictions as a matter of right. Ky. Const. § 110(2)(b). Five issues are raised and addressed as follows.

## Racial Composition of the Jury Panel

First, Adams alleges that he was denied his right to a jury panel representing a fair cross-section of his community. He claims error under the Sixth Amendment, as well as equal protection under the Fourteenth

Amendment, because only one member of the jury was an African-American male. Adams is African-American.

The Sixth Amendment right to a jury trial in criminal proceedings entails the right to have the jury's members drawn from "a representative cross-section of the community," *Miller v. Commonwealth*, 394 S.W.3d 402, 409 (Ky. 2011) (citing *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975)), to ensure an impartial jury is empaneled.

To establish a prima facie case for violation of the fair cross-section requirement, a defendant must show:

> (1) the group alleged to be excluded is a "distinctive" group in the community;
> (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and
> (3) this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Miller*, 394 S.W.3d at 409 (internal citations omitted).

Adams satisfied the first element, as African-Americans are a recognized "distinctive" group for jury selection inquiries. *Id.* at 410 (citing *Rodgers v. Commonwealth*, 285 S.W.3d 740 (Ky. 2009)).

However, Adams failed to offer proof that African-Americans have historically been unfairly or unreasonably underrepresented within the venire from which Christian County juries are selected. Although Adams provided 2010 census data, this Court has stated that the "mere citation to census data, without any other information, is not enough to show underrepresentation or systematic exclusion." *Mash v. Commonwealth*, 376 S.W.3d 548, 552 (Ky.

3

2012) (internal citations omitted). Without evidence of systematic exclusion, Sixth Amendment fair cross-section claims fail, *Miller*, 394 S.W.3d at 409-10, as do Fourteenth Amendment equal protection claims. *Castaneda v. Partida*, 430 U.S. 482, 494 (1977).

Adams argues that the jury qualification forms provided by the Administrative Office of the Courts do not request the race of potential jurors, thus allegedly preventing Adams from having evidence to prove the historic, systematic exclusion of African-Americans from the jury pool. Additionally, Adams claims that the destruction of records relating to randomized jury panel lists pursuant to former Section 14 of Part II of the Administrative Procedures of the Court of Justice[1] constituted failure to collect and retain information necessary to prove a fair cross-section claim.

However, Christian County juries are selected at random. As this Court has previously stated, "[e]xperience has taught [us] that random selection is *the most effective means* of rooting out discrimination in the selection of citizens to fill the jury pool so that it reflects a fair cross section of the community." *Doss*, 510 S.W.3d 830, 836 (Ky. 2016) (emphasis added). Additionally, even if Adams had shown that African-Americans were underrepresented on the jury panel, that fact alone does not give the trial court grounds to dismiss a proper, randomly-selected jury. *Id.* at 837. Thus, we find that Adams' arguments

---

[1] Former Section 14 of Part II of the Administrative Procedures of the Court of Justice, titled "Preservation of records and papers compiled in selection process," was repealed effective October 1, 2017.

about the jury selection form and the destruction of exhausted jury panel lists have no merit.

Because Adams has not established a prima facie fair cross-section claim under the Sixth Amendment, the trial court did not err to deny Adams' motion for a new trial.

## Denial of *Batson* Motion

Adams further contends that the trial court erred when it denied his motion pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), after the Commonwealth used a peremptory challenge to strike an African-American woman from the jury pool. We review a trial court's decision whether to grant a *Batson* motion for an abuse of discretion. *Rodgers*, 285 S.W.3d at 757-58.

*Batson* provides a three-prong test for analyzing claims of racial discrimination during jury selection under the Equal Protection Clause of the Fourteenth Amendment. *Batson*, 476 U.S. at 85. First, the defendant must establish a prima facie case of racial discrimination in the prosecutor's use of a peremptory challenge. *Id.* at 96-97. Once established, the burden shifts to the State to show "permissible racially neutral selection criteria and procedures" were used, but nonetheless "produced the monochromatic result." *Id.* at 94. Third, the trial court must determine whether the defendant carried his burden of proving purposeful discrimination. *Id.* at 97-98.

Here, Adams claimed that the Commonwealth's peremptory strike of an African-American woman from the jury pool constituted racial discrimination. The Commonwealth responded that the prospective juror was stricken because

5

Officer Frederico Rodriguez, a witness for the Commonwealth, recognized the juror's name as that of a woman he had recently ticketed. The trial court held that removal of a prospective juror because of her potential bias toward a government witness was a sufficiently race-neutral reason for the Commonwealth's peremptory strike.

Because the trial court's finding that the Commonwealth's explanation was race-neutral is not clearly erroneous, no abuse of discretion occurred. *Commonwealth v. Snodgrass*, 831 S.W.2d 176, 180 (Ky. 1992).

## Motion for Directed Verdict

Third, Adams contends that the trial court erred when it denied his motions for directed verdicts of acquittal on the charges of second-degree assault and first-degree unlawful imprisonment.

Drawing all reasonable inferences in favor of the Commonwealth, this Court's inquiry on appellate review of a directed verdict motion is whether the Commonwealth presented evidence sufficient for a reasonable juror to find the defendant guilty beyond a reasonable doubt. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). If it would be clearly unreasonable for a juror to find guilt, then the defendant is entitled to a directed verdict of acquittal. *Id.*

In this case, a jury's finding of second-degree assault requires intentional causation of serious physical injury. KRS 508.020(1)(b). First-degree unlawful imprisonment requires knowledge of the unlawful restraint of another and actual exposure of the other to a risk of serious physical injury. KRS 509.020(1); *McClellan v. Commonwealth*, 715 S.W.2d 464, 470 (Ky. 1986). For

6

both crimes, the required element of "serious physical injury" is defined as "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ." KRS 500.080(15).

Here, the victim testified that Adams fractured the right side of her face and caused damage to her nasal cavity. She claims to have suffered from dizziness, headaches, memory loss, and pain following her injuries. She continues to suffer from sinus infections and prolonged pain.

The Commonwealth also presented testimony from Dr. Jeremy Helphenstine, the ER physician who treated Shakoor. Dr. Helphenstine testified that Shakoor had a small abrasion on the cornea of her right eye, and a CAT scan revealed a maxillary fracture under her right eye. Although Dr. Helphenstine could not confirm whether Shakoor suffered from a concussion, Shakoor testified that she suffered from concussion-related symptoms following the incident, including dizziness, headaches, and memory loss.

Based upon the evidence presented, a reasonable juror could have found that the victim's injuries and her resultant symptoms constitute prolonged impairment of her health under the statutory definition of "serious physical injury" in KRS 500.080(15). *Parson v. Commonwealth*, 144 S.W.3d 775, 787 (Ky. 2004) (concluding that prolonged pain satisfies the "prolonged impairment of health" element of a serious physical injury).

7

Thus, we hold that the trial court did not commit error when it denied Adams' motion for a directed verdict on either charge.

## Motion to Prohibit Recorded Phone Calls

Fourth, Adams claims the trial court erred when it did not prohibit the introduction of his recorded phone calls made from jail. We review a trial court's ruling on a motion to prohibit evidence during discovery, or, alternatively, a continuance motion, for a clear abuse of discretion. *Hunter v. Commonwealth*, 869 S.W.2d 719, 721 (Ky. 1994) (internal citations omitted).

On August 5, 2016, the Commonwealth informed defense counsel that it planned to introduce evidence from several recorded phone calls of Adams while he was in jail. On August 8, with trial scheduled for August 11, defense counsel requested that two of the calls selected by the prosecution be excluded from evidence. Defense counsel did not alternatively request a continuance because his client directed him not to delay the trial. The trial court decided to proceed with the trial as scheduled.

While it is within a trial court's discretion to prohibit the introduction of untimely-disclosed evidence, it is also within its discretion to grant a continuance, or, alternatively, to go ahead with the trial schedule. RCr 7.24. Adams now argues that the late-tendered evidence prejudiced his case. However, at Adams' direction, his counsel did not request a continuance, which would have provided more time to review the recorded calls to prepare for trial. Adams cannot now claim error based upon his own inaction. Accordingly, we hold that the trial court did not abuse its discretion.

8

## Evidence of Prior Charges and Convictions

Finally, Adams claims that during the penalty phase, the trial court erred in admitting evidence of facts and circumstances underlying his prior charges and convictions. While this error was unpreserved, Adams seeks palpable error review under RCr 10.26. It is proper to reverse a trial court under palpable error review only when the error results in manifest injustice. RCr 10.26; *Elery v. Commonwealth*, 368 S.W.3d 78, 97-98 (Ky. 2012).

During the penalty phase of this criminal proceeding, evidence of Adams' prior convictions and limited evidence of the nature of those prior convictions was properly admitted. *Parker v. Commonwealth*, 482 S.W.3d 394, 407 (Ky. 2016) (citing KRS 532.080 and KRS 532.055). However, evidence of prior indictments, plea agreements, names of victims from prior crimes, and other such information was also admitted. We found the introduction of such evidence improper in *Parker*, and we equally find it was an error here. *Parker*, 482 S.W.3d at 408.

However, although we find that it was error for information about Adams' prior indictments and plea agreements to be submitted to the jury, the defendant must either be "substantially prejudiced by the error or otherwise [] subjected as a result of it to manifest injustice" to be entitled to relief under RCr 10.26. *Id.* at 407. Actual prejudice or manifest injustice is required. *Id.*

Here, as in *Parker*, a third party read the defendant's prior convictions into evidence straight from the administrative record. *Id.* Likewise, the entire, unredacted record was submitted to the jury during the penalty phase of trial,

9

which included details such as amended charges, plea agreements, and details from prior offenses. *Parker*, 482 S.W.3d at 407. As in this case, the Commonwealth in *Parker* never referred to the improperly-admitted evidence of prior indictments or plea agreements in its argument. *Id.* at 408. Nor was that information read aloud to the jury. *Id.*

We have held that, even though the jury was shown improperly-admitted information about the defendant's prior dismissed or amended charges, the defendant failed to show "a likelihood—'a reasonable possibility'—that, but for the error, a different sentence would have been imposed." *Parker*, 482 S.W.3d at 407-08 (internal citation omitted).

The mere fact that the jury had access to that evidence in *Parker* did not permit a finding of substantial prejudice or manifest injustice, and we accordingly denied the defendant relief under RCr 10.26. *Id.* at 408. Here, we likewise hold that Adams did not suffer substantial prejudice or manifest injustice warranting palpable error under RCr 10.26.

## Conclusion

For the foregoing reasons, we hereby affirm the decision of the Christian Circuit Court.

All sitting. All concur.

10

COUNSEL FOR APPELLANT:

Linda Roberts Horsman
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Jesse Robbins
Assistant Attorney General

David Bryan Abner
Assistant Attorney General

11