COMMONWEALTH of Kentucky,
Appellee

v.

James DOSS, Appellant

2015–SC–000018–CL

Supreme Court of Kentucky.

DECEMBER 15, 2016

Rehearing Denied March 23, 2017

COUNSEL FOR APPELLANT: Andy Beshear, Attorney General of Kentucky, Dorislee J. Gilbert, Assistant Attorney General

COUNSEL FOR APPELLEE JAMES DOSS: Daniel T. Goyette, Cicely Jaracz Lambert, Sean Thomas Pharr, Office of the Louisville Metro Public Defender

COUNSEL FOR AMICUS CURIAE THE NATIONAL BAR ("THE NBA") ASSOCIATION AND THE NATIONAL ASSOCIATION FOR THE ADVANCE-MENT OF COLORED PEOPLE ("THE NAACP"): Stanford Obi, Henry G. Gyden

COUNSEL FOR AMICUS CURIAE KENTUCKY ASSOCIATION OF CRIM-INAL DEFENSE ATTORNEYS (KACDL): Erwin W. Lewis, Larry David Simpson

### OPINION OF THE COURT BY JUSTICE VENTERS CER-TIFYING THE LAW

Appellant, Commonwealth of Kentucky, requested certification of the law pursuant to CR 76.37(10) which, in conjunction with Section 115 of the Constitution of Kentucky, permits the Commonwealth to obtain appellate review of a final order that is adverse to the Commonwealth. Appellee James Doss, charged with theft, was acquitted by a jury at the conclusion of his trial in the Jefferson Circuit Court.

The Commonwealth contends that the trial judge improperly discharged the jury panel initially selected to try the case because of its racial composition, and then proceeded with the trial only after empaneling a second, more racially inclusive jury. Doss's acquittal and the Double Jeopardy Clause of the state and federal constitutions[1] prevents the Commonwealth from retrying the case against Doss. But the Commonwealth contends that the issue presented is of significant public importance to warrant review by this Court and we agree.

The principal question we address is this:

Does a trial judge have the discretion to dismiss a randomly selected petit jury panel because it appears to be unrepresentative of a fair cross section of the community, despite the fact that the rules for jury selection were properly followed and no evidence suggests that the jury pool from which the panel was drawn was not a fair cross section of the community or that any significant segment of the local population was systematically excluded from the jury pool?[2]

We also certify the question posed by the Commonwealth with respect to restrictions placed by the trial judge on the questions that could be asked during the voir dire examination of the second jury panel called in to try the case:

---

1. U.S. Constitution, Amendment V: "No person shall... be subject for the same offence to be twice put in jeopardy of life or limb; ...."

 Kentucky Constitution § 13: "No person shall, for the same offense, be twice put in jeopardy of his life or limb, ...."

2. The Commonwealth phrased it question with multiple subparts. We have restated the question to more clearly define the issue and to articulate more precisely our certification of the law.

May a trial judge bar the parties during voir dire from examining or challenging prospective jurors with respect to statements made by the jurors during a previous voir dire examination?

The Commonwealth also requested certification of the law with respect to whether the dismissal of the jury as occurred in this case offended any rights of individual citizens who had been duly selected for jury service on this case. Our certification regarding the dismissal of the jury makes it unnecessary for us to address this question and we decline to do so.

## I. Factual and Procedural Background

James Doss appeared before Division Six of the Jefferson Circuit Court for a trial by jury on a felony theft charge. After resolving a number of pre-trial issues, the trial judge brought into the courtroom a panel of 41 prospective jurors randomly selected from the larger pool of Jefferson County citizens available that day for jury service in the various divisions of the Jefferson Circuit Court. The jurors for Doss's trial would be chosen from that panel of 41 in accordance with the applicable rules for jury selection. RCr 9.30; Administrative Procedures for the Court of Justice, Part II, Section 10.

Doss is an African–American. When it became apparent that only one of the 41 persons on the jury panel was African–American, Doss moved to dismiss the entire panel on the grounds that it did not represent a fair cross section of the community. He offered no statistical or demographic evidence to support his argument, and he offered no evidence to show that the racial composition of the panel resulted from anything other than a purely random selection process. In short, Doss had noth-

ing to demonstrate a systematic exclusion from jury service of any segment of Jefferson County society. Ultimately, he conceded that the procedures applicable to jury selection were properly followed.

Despite the absence of hard statistics, for purposes of this certification, we readily accept the premise that a single African–American on a jury venire of 41 individuals constitutes 2.4% of the panel, which substantially under-represents the African–American community of Jefferson County, Kentucky. The trial judge noted that a jury panel of this racial composition was highly unusual, even unprecedented. He deferred ruling on Doss's motion and directed the parties to proceed with the voir dire examination.

When voir dire examination was completed, but before the peremptory challenges were exercised, the judge resumed the earlier discussion of the jury composition with the prosecutor and the defense counsel. Although obviously troubled by the anomalous under-representation of African–Americans, the judge found nothing to indicate the result was due to anything other than the random selection required by our rules. The court denied Doss's motion to strike the whole jury on account of its racial imbalance.

After the removal of jurors for cause and peremptory challenges, the panel, which still included the lone African–American, had a surplus of four jurors. In accordance with proper jury selection protocol, the clerk of the court randomly selected four jurors to be excused from the panel. The African–American was one of the four jurors excused. Thus, no African–American was seated on the petit jury selected for Doss's trial.[3]

3. The record does not disclose the final racial or ethnic composition of the petit jury initially selected for Doss's trial, except that none were African–American.

At that point, Doss renewed his motion to dismiss the jury because of its racial characteristics. The trial judge reiterated his concern about the racial composition of the selected jury, but again noted that the applicable rules had been properly followed and that only random chance could account for the anomaly. The judge again denied Doss's motion, but Doss's attorney persisted, arguing that the obvious racial imbalance was itself *prima facie* evidence of systematic discrimination in the Jefferson County jury selection process that should shift the burden of proving otherwise to the Commonwealth.

Ultimately, the trial court concluded that regardless of proper compliance with the jury selection procedures, Doss was entitled to a petit jury that included at least one African–American juror. Over the Commonwealth's objection, the trial court dismissed the jury and rescheduled the trial for the next morning with a new venire of prospective jurors.

The next day, a second panel of 41 prospective jurors was drawn from the Jefferson County jury pool and assigned for duty in Division Six where Doss's case was again slated for trial. This venire included four African–Americans. Doss again moved to strike the entire panel as not being fairly representative of the community. The court denied his motion and the jury selection process began anew.

The voir dire examination of this second jury panel gives rise to a second question presented by the Commonwealth for certification. The new venire included a number of individuals who had been on the venire that was discharged the previous day, including one who had been challenged for cause and stricken from the panel. The Commonwealth perceived a need to inquire of those individuals about their re-

sponses to voir dire questions asked the previous day, especially the juror who had been removed from the panel for cause. The trial judge admonished counsel that the previous day's voir dire examination should be treated as if it never happened, and that none of the jurors' responses of the previous day could be mentioned or used for any purpose. The Commonwealth objected.

The case proceeded to trial and Doss was acquitted. The Commonwealth moved for certification of law with respect to the questions set forth above.

II. **A trial judge does not have the discretion to dismiss a randomly selected jury panel which, despite it unrepresentative appearance, was not shown to have been drawn from a jury pool that failed to reflect a fair cross section of the community, and where all other law applicable to the selection of petit jury panels was properly followed.**

Thirty years ago, in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), a case that also originated in the Jefferson Circuit Court, the United States Supreme Court acknowledged that the deliberate exclusion of African–Americans from jury service was "a primary example of the evil the Fourteenth Amendment was designed to cure."[4] The Court described more than a century of its "unceasing efforts to eradicate racial discrimination in the procedures used to select the venire from which individual jurors are drawn." *Id.* In *Swain v. Alabama*, 380 U.S. 202, 203–04, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the Supreme Court recognized that a "State's purposeful or deliberate denial to Negroes on account of race of partic-

---

4. *Id.* at 85, 106 S.Ct. 1712 (citing *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664

(1879)) (invalidating a state statute that provided only white men could serve as jurors).

ipation as jurors in the administration of justice violates the Equal Protection Clause." *Batson* reaffirmed that principle. 476 U.S. at 84, 106 S.Ct. 1712.

 *Batson* reiterated Justice Frankfurter's dissenting comment in *Thiel v. Southern Pac. Co.*, 328 U.S. 217, 227, 66 S.Ct. 984, 90 L.Ed. 1181 (1946): "Since the color of a man's skin is unrelated to his fitness as a juror, negroes cannot be excluded from jury service because they are negroes. *Batson*, 476 U.S. at 87, 106 S.Ct. 1712. "Whether jury service be deemed a right, a privilege, or a duty, the State may no more extend it to some of its citizens and deny it to others on racial grounds than it may invidiously discriminate in the offering and withholding of the elective franchise .... [The State] must hew to federal constitutional criteria in ensuring that the selection of membership is free of racial bias." *Carter v. Jury Commission of Greene County*, 396 U.S. 320, 330, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970) (internal citations omitted).

 "The right to a *completely impartial jury* is protected by Section Eleven of the Kentucky Constitution as well as the Sixth and Fourteenth Amendments to the U.S. Constitution." *Fugate v. Commonwealth*, 993 S.W.2d 931, 939 (Ky. 1999) (citing *Paenitz v. Commonwealth*, 820 S.W.2d 480, 481 (Ky. 1991) (emphasis added). The right to an impartial jury, however, does not afford a litigant the right to a jury that includes one or more members of his or her ethnic or racial background, religious creed, gender, profession, or other personal characteristic by which one is identified. The impossibility of constructing a jury of 12 persons that "insure[s] representation of every distinct voice in the community" is obvious and well recognized. *Williams v. Florida*, 399 U.S. 78, 102, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). "The number of our races and nationalities stands in the way of evolution of such a conception of due process or equal protection." *Akins v. State of Texas*, 325 U.S. 398, 403, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945).

 "Defendants under our criminal statutes are not entitled to demand representatives of their racial inheritance upon juries before whom they are tried." *Id.* "Although a defendant has no right to a petit jury composed in whole or in part of persons of [the defendant's] own race, he or she does have the right to be tried by a jury whose members are selected by non-discriminatory criteria." *Powers v. Ohio*, 499 U.S. 400, 404, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (internal quotes and citations omitted.) The Constitution does not require "petit juries ... [that] mirror the community and reflect the various distinctive groups in the population," *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); instead the Supreme Court "has unambiguously declared that the American concept of the jury trial contemplates *a jury drawn from a fair cross section of the community*," *id.* at 527, 95 S.Ct. 692 (emphasis added).

 Accordingly, Doss has no constitutional right to a petit jury that included an African–American or even one that reflected the racial or ethnic makeup of his community. However, he had a right to a petit jury drawn from a larger pool of potential jurors that reflected a "fair cross section of the community." It is presumed that a jury "*drawn from a fair cross section of the community*" is impartial. *Holland v. Illinois*, 493 U.S. 474, 480, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990) ("[A] fair cross section on the venire is a means of assuring ... an *impartial* [jury])." The burden is on the party challenging the jury's impartiality to show otherwise. *Johnson v. Commonwealth*, 292 S.W.3d

889, 894 (Ky. 2009) (citation omitted) ("[T]he burden is upon the Appellant to establish a *prima facie* violation of the fair cross-section requirement.").

Experience has taught that random selection is the most effective means of rooting out discrimination in the selection of citizens to fill the jury pool so that it reflects a fair cross section of the community. To suppress the overt, subtle, and even subconscious bias that can accompany human intervention, we eliminated years ago the use of jury commissioners who had the duty to fill the jury wheel with hand-picked names of "intelligent, sober, discreet and impartial citizens, resident housekeepers in different portions of the county." KRS 29.070 (repealed). The selection of prospective jurors is now accomplished by an indifferent and color-blind computer that produces a randomized list of prospective jurors consisting of the county's roll of registered voters, persons over the age of eighteen holding valid drivers' licenses, and citizens of the state who have filed resident individual tax returns. KRS 29A.040; *see* Administrative Procedures for the Court of Justice, Part II, Sections 3 and 5.

We recognize that other sources might be effectively and efficiently tapped to broaden the scope of citizens available for jury selection. But neither Doss nor the Amici Curiae that have participated in this appeal cite any specific deficiency in Kentucky's current method of jury selection and they do not suggest any better method of populating the jury pool to achieve a fair cross section of the community.[5]

Instead, they argue that we should vest trial judges with the discretion to cure perceived deficiencies in the jury panel composition by discharging the jury panel and replacing it with another, presumably drawn from the same jury pool. Respectfully, we decline. We believe the temporary advantage of such a policy is short-sighted and would be short-lived. Different judges will have different ideas on what constitutes a fairly composed jury: i.e., How many jurors matching the race of each party should be seated to compose a fair jury? What personal characteristic of the parties, such as religion, ethnicity, gender, and national origin, should be selected to achieve a fairly composed jury?[6] Without standards by which to judge the "proper" composition of a jury, each trial judge would be left to apply his or her own individual criteria, discharging and replacing jury panels until a pleasing composition was attained. The advantage of random selection would be lost; successive random draws until the desired result is achieved is not random.

No one would reasonably argue that a judge could properly strike a qualified individual juror from the petit jury panel simply to make room for a different juror of another race or ethnicity. Outrage would be properly expressed if a trial judge said to a juror, "You are excused because you are white and I need to get a black person on the jury;" or "You are

---

5. Amicus Kentucky Association of Criminal Defense Lawyers focused its argument on the misuse of peremptory strikes by prosecutors to remove African–American jurors. That concern is not applicable here because no peremptory strike was used to remove an African–American juror.

6. It is, of course, undeniably true that race in America is not simply one of the many factors that contributes to one's personal identity.

The intractable problem of eradicating racial discrimination from social and government institutions, including juries, has been a major legislative and judicial policy objective for the past 70 years. Regardless of how one views the effect that effort has achieved, our history of insidious discrimination based on racial differences sets it apart from other biases and prejudices.

excused because we have enough African–Americans on this panel and I need to have an Asian." That is, however, exactly what happened here, although it was done *en masse* rather than individually. The trial court discharged a group of individually qualified jurors, properly and randomly selected, because none was of the same race as Doss. Decades after *Batson*, we are not inclined to reintroduce the purposeful selection of jurors on account of race.

■ RCr 9.30(2) mandates that "[t]he jury-selection process shall be conducted in accordance with Part Two (2) of the Administrative Procedures of the Court of Justice." Part Two (2) of the Administrative Procedures of the Court of Justice, Section 10 provides for the random selection of jurors serving on petit juries. The selection or dismissal of individual jurors or a collective panel of jurors on account of race is forbidden except when competent evidence shows that the jurors were drawn from a panel that failed to represent a fair cross section of the community.

■ In this instance there has been no such showing. We have consistently held that trial judges enjoy wide discretion in matters relating to the dismissal of jurors for cause. *See Bowman ex rel. Bowman v. Perkins*, 135 S.W.3d 399, 402 (Ky. 2004). However, a trial judge's decision that is unsupported by sound legal principles is an abuse of discretion.[7] The decision to discharge the entire jury panel properly selected in accordance with applicable law was unsupported by sound legal principles and was, thus, an abuse of discretion.

■ Accordingly, in response to the certified question we conclude that a trial judge does not have the discretion to dismiss a randomly selected jury panel which,

despite it unrepresentative appearance, was not shown to have been drawn from a jury pool that failed to reflect a fair cross section of the community, and all other law applicable to the selection of petit jury panels was properly followed. The law is so certified.

### III. May a trial judge bar the parties during voir dire from examining or challenging prospective jurors with respect to statements made by the jurors during a previous voir dire examination?

■ We begin our review of this question with recognition of the general rule that a party in litigation has "no absolute right to question prospective jurors [with respect to particular matters] because the extent of direct questioning by counsel during voir dire is a matter within the discretion of the trial court." *Grooms v. Commonwealth*, 756 S.W.2d 131, 134 (Ky. 1988); *accord St. Clair v. Commonwealth*, 451 S.W.3d 597, 620 (Ky. 2014) (quotation and internal citations omitted) ("This Court has long held that it is within the trial court's discretion to limit the scope of voir dire."). RCr 9.38 provides that the trial court may permit counsel for the Commonwealth and the defendant to examine the prospective jurors, or it may itself conduct the examination. "In the latter event, the court *shall* permit [counsel] to supplement the examination by such further inquiry *as it deems proper.*" RCr 9.38 (emphasis added).

■ Although there is no "affirmative right to ask certain specific questions of prospective jurors," *St. Clair*, 451 S.W.3d at 620 (citing *Fields v. Commonwealth*, 274 S.W.3d 375, 393 (Ky. 2008)

---

7. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) ("The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.").

(quoting *Thompson v. Commonwealth*, 147 S.W.3d 22, 53 (Ky. 2004))), it is universally accepted that due process entitles parties in litigation to an unbiased decision, and in jury trials, one means of assuring an unbiased decision is a "voir dire examination ... to enable the court and counsel to screen from the jury panel those individuals whose verdict might be influenced by [extraneous matters.]" *Grooms*, 756 S.W.2d at 134. It necessarily follows that trial counsel, by direct examination of prospective jurors or by request to the trial court pursuant to RCr 9.38, must have a means to inquire into matters that would expose known or suspected biases that might reasonably lead to a challenge of the juror's qualification to serve.

▮ Prior statements of prospective jurors relevant to their qualifications to serve on the particular case is a proper subject of inquiry. It makes no difference if the statement was made in the context of a prior voir dire experience. In the case at hand, if the matter upon which a prospective jury was examined during the first voir dire session was a proper subject of inquiry, it would seem to be so also in the second round of voir dire questioning in the very same case.

▮ We agree that it is within the trial judge's discretion to impose particular limits on the scope of inquiry into a juror's previous statements when doing so would prevent the likely dissemination of prejudicial information or would unduly prolong the voir dire examination, or achieve some other efficiency without jeopardizing the rights of the parties to a fair trial. But we conclude further that a blanket rule during voir dire that prohibits reference to a statement made by a prospective juror during a previous voir dire examination is an overly-broad restriction upon the parties' ability to fairly assess and determine the qualifications of jurors. Consequently, the trial court's imposition of that rule was an abuse of discretion.

▮ Accordingly, in response to the certified question we conclude that a trial judge may not generally prohibit the parties during voir dire from examining or challenging a prospective juror with respect to statements made by the juror during a previous voir dire examination, although the trial court may impose reasonable limitations on the inquiry. The law is so certified.

## IV. Conclusion

The law is certified as set forth above.

All sitting. All concur.