RENDERED: MARCH 25, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0831-MR

ANTONIO CORDERA DOUGLAS                                   APPELLANT

v.
APPEAL FROM DAVIESS CIRCUIT COURT
HONORABLE LISA PAYNE JONES, JUDGE
ACTION NO. 17-CR-00228

COMMONWEALTH OF KENTUCKY                                   APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; GOODWINE AND McNEILL, JUDGES.

McNEILL, JUDGE: Antonio Cordera Douglas appeals from an order of the

Daviess Circuit Court denying his motion pursuant to Kentucky Rules of Criminal

Procedure (RCr) 11.42. We affirm.

The underlying factual history of this matter was summarized in

*Douglas v. Commonwealth*, No. 2018-SC-000250-MR, 2019 WL 1747031 (Ky.

Apr. 18, 2019):

On January 21, 2017, [Victoria] McFarland drove to Douglas' home in Daviess County, Kentucky, to "hang out" and have sex. They had known each other for much of their lives and had a history of intimacy with each other. Prior to her arrival, McFarland consumed two beers and also smoked marijuana. While at Douglas' house, Douglas told McFarland that he was scared and felt like someone was after him. Douglas then left the room and returned with a pistol. McFarland told him that he did not need the gun and that it was "not going to do anything for [him]." The two began kissing.

Sometime thereafter, McFarland noticed Douglas' pistol on the floor, picked it up, and placed it in a nearby potted plant located in the corner of the living room. After a period of additional kissing, McFarland decided that she wanted to leave. Douglas protested and asked her where his gun was. He then stated that she was not allowed to leave until he found his gun. McFarland informed him that the gun was in the plant. After she turned and attempted to leave, Douglas grabbed her shirt, sat her down on a chair, pointed the gun at her head and shot her. The bullet passed through McFarland's right arm and pelvic area, with an exit wound on her buttock.

Douglas declined McFarland's cry for help. Instead, he laughed and said that she "took that like a soldier." He then picked her up, exited the house, and placed her in the driver's seat of her car. McFarland successfully drove home but then fell on the ground after exiting her vehicle. Seeing her neighbor nearby, she yelled "he shot me over a piece of ass!"

McFarland was hospitalized for two or three days during which she underwent two surgeries. Her arm required a metal plate and screws. In addition to other injuries, her strength and mobility had been diminished, specifically in her fingers. She disclosed to an investigating detective that although she thought the shooting was intentional, it could have been an

"accident."  This disclosure was reiterated during her subsequent trial testimony.

*Id.* at *1.

Douglas was sentenced to twenty years' incarceration following a jury trial.[1]  After the Kentucky Supreme Court affirmed Douglas' conviction, he filed a *pro se* motion for relief pursuant to RCr 11.42 in the Daviess Circuit Court.  The motion was denied without an evidentiary hearing.  This appeal followed.

To prevail under RCr 11.42, the defendant must show that trial counsel's performance was deficient by demonstrating counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  The defendant must also show that the deficient performance prejudiced the defense by demonstrating that counsel's errors were so serious as to deprive the defendant of a fair trial, *i.e.*, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).  The proper standard for attorney performance is that of reasonably effective assistance and the inquiry must be whether counsel's assistance was reasonable considering all of the circumstances.  *Id.*  "[A] court

_____

[1] The jury also found that Douglas was a persistent felony offender in the first degree.

must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689, 104 S. Ct. at 2065 (internal quotation marks and citation omitted).

Douglas raises four arguments to this Court, which we will address in turn. His first two arguments concern the racial composition of the jury. He contends that he was denied effective assistance of counsel because his trial attorney failed to object to (1) the venire panel not being a representative cross section of the population; and (2) a jury in which there was a substantial underrepresentation of a racial or other identifiable group. The first part of Douglas' argument is self-defeating. On page 4 of his brief to this Court, he acknowledges "there was no showing that the jurors in this case were not drawn from a fair cross section of the community[.]" Nevertheless, he asserts that trial counsel should have raised the issue. Douglas' argument is without merit and we decline to address it further.

Turning to the second part of Douglas' argument regarding the racial composition of the jury, we similarly find it to be meritless. The right to a completely impartial jury does not entitle parties to a jury of any particular composition. *See Commonwealth v. Doss*, 510 S.W.3d 830, 835 (Ky. 2016).

Without any evidence whatsoever, Douglas asserts that trial counsel "failed to investigate the back door practices of racial discrimination utilized by officials in Daviess County where only 1 or 2 African American's [sic] are called to be venire panel members[.]"[2] Douglas fails to identify what he believes these "back door practices" to be, yet he contends his attorney should have made the argument nonetheless.

> "Defendants under our criminal statutes are not entitled to demand representatives of their racial inheritance upon juries before whom they are tried." [*Akins v. State of Texas*, 325 U.S. 398, 403, 65 S. Ct. 1276, 89 L. Ed. 1692 (1945)]. "Although a defendant has no right to a petit jury composed in whole or in part of persons of [the defendant's] own race, he or she does have the right to be tried by a jury whose members are selected by nondiscriminatory criteria." *Powers v. Ohio*, 499 U.S. 400, 404, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991) (internal quotes and citations omitted.) The Constitution does not require "petit juries . . . [that] mirror the community and reflect the various distinctive groups in the population," *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975)[.]

*Doss*, 510 S.W.3d at 835.

The Kentucky Supreme Court went on to describe the criteria used in Kentucky to select prospective jurors:

> [t]he selection of prospective jurors is now accomplished by an indifferent and color-blind computer that produces a randomized list of prospective jurors consisting of the county's roll of registered voters, persons over the age of

---

[2] *See* page 3 of Appellant's brief.

eighteen holding valid drivers' licenses, and citizens of the state who have filed resident individual tax returns. KRS[3] 29A.040; *see* Administrative Procedures for the Court of Justice, Part II, Sections 3 and 5.

*Id.* at 836. Douglas fails to identify any irregularities with the process of selection of prospective jurors in his case. His argument must fail.

Douglas next argues that his trial counsel failed to present a defense. He asserts, with no factual basis whatsoever, that defense counsel should have presented a defense of "insanity or EED."[4] We find this argument to be meritless. Douglas exercised his Fifth Amendment right against self-incrimination and declined to testify. Defense counsel did not call any witnesses. Douglas fails to identify any witnesses he believes should have been called in his defense or the factual basis for any defense related to insanity or EED. RCr 11.42(2) requires that Douglas' motion "shall state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds." He failed to do so.

Moreover, Douglas' assertions are contradicted by the record before us. Defense counsel aggressively and thoroughly cross-examined the victim in this case. It was clear from cross-examination that counsel's trial strategy was to show

---

[3] Kentucky Revised Statutes.

[4] Although undefined by Douglas, we presume "EED" to mean extreme emotional disturbance.

the shooting was accidental, rather than the result of any intentional act or wanton behavior by Douglas. Counsel's cross-examination resulted in the victim admitting that she had used alcohol and marijuana on the night of the shooting and that Douglas was not angry, jealous, or otherwise exhibiting aggressive behavior on the night in question. McFarland also admitted that, even though she told police she believed the shooting was intentional, she could not say that it was intentional and acknowledged it could have been accidental. Trial counsel was also able to reveal inconsistencies between what McFarland told police on the night of the shooting and her testimony at trial. Accordingly, trial counsel demonstrated *at least* a level of reasonable effectiveness and Douglas' argument must fail.

Douglas finally contends that trial counsel "failed to offer evidence of [his] mental state at the time of the offense in mitigation at sentencing[.]" His entire supporting argument is two sentences in length. Although defense counsel did not call any witnesses during the sentencing phase of the trial, she asked the jury for leniency. The jury sentenced Douglas to twenty years' incarceration after finding he was a persistent felony offender in the first degree. This was *in lieu* of any sentence for his conviction of assault in the first degree. Douglas was facing twenty to fifty years or a life sentence, and the jury recommended the minimum

amount of time. Therefore, we disagree with Douglas that trial counsel's strategy was ineffective.

For the foregoing reasons, the order of the Daviess Circuit Court is affirmed.

ALL CONCUR.


BRIEF FOR APPELLANT:

Antonio Cordera Douglas, *pro se*
LaGrange, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky