RENDERED:  SEPTEMBER 23, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1167-MR

CURTIS SNELL                                                APPELLANT

APPEAL FROM KENTON CIRCUIT COURT
v.          HONORABLE GREGORY M. BARTLETT, JUDGE
ACTION NO. 16-CR-00665

COMMONWEALTH OF KENTUCKY                                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; JONES AND L. THOMPSON,
JUDGES.

JONES, JUDGE:  Curtis Snell appeals from the Kenton Circuit Court's order

denying the motion to vacate his sentence pursuant to RCr[1] 11.42.  We affirm.

## I. BACKGROUND

A full history of this case may be found in the Kentucky Supreme

Court's unpublished opinion stemming from Snell's direct appeal.  *Snell v.*

---

[1]  Kentucky Rules of Criminal Procedure.

*Commonwealth*, No. 2018-SC-000219-MR, 2020 WL 1846852 (Ky. Mar. 26, 2020). Briefly stated, Snell and his then-girlfriend, Jennifer Konkright, were at a Florence bar in 2016, when Konkright engaged in a physical confrontation with a female acquaintance, Linsey Kidwell. After Snell attempted to intervene in this dispute, he was attacked by four of Kidwell's friends, who happened to be members of the "Bad to the Bone" motorcycle gang. Bar bouncers eventually removed all combatants from the premises. Later that evening, Snell and Konkright were driving when they happened upon Kidwell's vehicle and began to follow her. At some point, Konkright's vehicle pulled alongside Kidwell's vehicle, and several gunshots were fired, striking Kidwell in the thigh and abdomen. Snell claimed Konkright had fired the gun, but members of the motorcycle gang, who were present in another nearby vehicle, identified Snell as the shooter to investigating officers.

At his trial,[2] the jury found Snell guilty of first-degree assault,[3] four counts of first-degree wanton endangerment,[4] and being a first-degree persistent felony offender (PFO).[5] The jury recommended a consecutive sentence for all

---

[2] Snell had two trials for these charges. His first trial ended in a mistrial when two jurors failed to report back to the trial court.

[3] Kentucky Revised Statutes (KRS) 508.010, a Class B felony.

[4] KRS 508.060, a Class D felony.

[5] KRS 532.080.

enhanced counts, totaling ninety years in prison, but the trial court ultimately

reduced this recommendation to a maximum statutory sentence of seventy years'

imprisonment.[6]  After the Kentucky Supreme Court affirmed his conviction on

direct appeal, Snell subsequently filed a *pro se* motion to vacate sentence under

RCr 11.42.  The trial court summarily denied relief in a written order entered on

August 4, 2021.  This appeal followed.

## II. ANALYSIS

A successful petition for relief under RCr 11.42 based on ineffective

assistance of counsel must survive the twin prongs of "performance" and

"prejudice" provided in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052,

80 L. Ed. 2d 674 (1984), *accord Gall v. Commonwealth*, 702 S.W.2d 37 (Ky.

1985).  The "performance" prong of *Strickland* requires as follows:

> Appellant must show that counsel's performance was
> deficient.  This is done by showing that counsel made
> errors so serious that counsel was not functioning as the
> "counsel" guaranteed the defendant by the Sixth
> Amendment, or that counsel's representation fell below
> an objective standard of reasonableness.

*Parrish v. Commonwealth*, 272 S.W.3d 161, 168 (Ky. 2008) (internal quotation

marks and citations omitted).  The "prejudice" prong requires a showing that

"counsel's errors were so serious as to deprive the defendant of a fair trial, a trial

---

[6] "In no event shall the aggregate of consecutive indeterminate terms exceed seventy (70) years[.]"  KRS 532.110(1)(c).

whose result is reliable." *Commonwealth v. McGorman*, 489 S.W.3d 731, 736 (Ky. 2016) (quoting *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064).

Both *Strickland* prongs must be met before relief pursuant to RCr 11.42 may be granted. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. This is a very difficult standard to meet. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). We review counsel's performance under *Strickland de novo*. *McGorman*, 489 S.W.3d at 736.

Snell made several different claims in his *pro se* RCr 11.42 motion to the trial court, but he has abandoned all but one on appeal. We consider those unbriefed claims to be waived. "An appellant's failure to discuss particular errors in his brief is the same as if no brief at all had been filed on those issues." *Milby v. Mears*, 580 S.W.2d 724, 727 (Ky. App. 1979); *see also Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 815-16 (Ky. 2004).

For his sole remaining issue, Snell contends his trial attorney was ineffective when he failed to challenge the racial composition of the jury panel. Snell describes himself as "an African American man that was convicted . . . for shooting a white woman." (Appellant's Brief at 6.) In both of his trials, there were

no African American people seated on the jury panels, and he was ultimately convicted by a jury consisting entirely of white jurors. Snell argues his trial attorney should have brought this apparent deficiency to the attention of the trial court, and he suffered prejudice which resulted in his conviction and sentence.

In considering Snell's argument, the trial court determined that, "short [of] some actual *Batson* challenge[7] or other deficiency for the Court to examine, there is no presumptive bias based on race alone within a jury." (Record (R.) at 341.) The trial court quoted both our Supreme Court and the Supreme Court of the United States in so ruling: "[d]efendants are not entitled to a jury of any particular composition, . . . but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Rodgers v. Commonwealth*, 285 S.W.3d 740, 759 (Ky. 2009) (quoting *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S. Ct. 692, 702, 42 L. Ed. 2d 690 (1975)).

A defendant may challenge a conviction based on a flawed venire-selection process; *see, e.g.*, *Johnson v. Commonwealth*, 292 S.W.3d 889, 892-94 (Ky. 2009), *overruled on other grounds by Ray v. Commonwealth*, 611 S.W.3d 250 (Ky. 2020). However, it is entirely the defendant's burden to establish a violation. *Id*. at 894 (citing *Duren v. Missouri*, 439 U.S. 357, 99 S. Ct. 664, 58 L. Ed. 2d 579

---

[7] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

-5-

(1979)).  Snell argues his trial attorney should have attempted to show that such a violation took place here.  However, jury panels in Kentucky are chosen by

> an indifferent and color-blind computer that produces a randomized list of prospective jurors consisting of the county's roll of registered voters, persons over the age of eighteen holding valid drivers' licenses, and citizens of the state who have filed resident individual tax returns. KRS 29A.040; *see* Administrative Procedures for the Court of Justice, Part II, Sections 3 and 5.

*Commonwealth v. Doss*, 510 S.W.3d 830, 836 (Ky. 2016).

Snell fails to demonstrate exactly how Kenton County deviates from the system described in *Doss*.  His argument is entirely conclusory:  "[t]he fact that there were no African Americans in either jury panel must mean that there is a systematic exclusion in the jury panel selection process."  (Appellant's Brief at 9.) "Conclusory allegations do not suffice to prove a claim of ineffective assistance of counsel."  *Commonwealth v. Crumes*, 630 S.W.3d 630, 639 (Ky. 2021).  Curiously, Snell proffers that "[c]urrent census data shows that Kenton County is approximately 91% white" (Appellant's Brief at 9) without considering that this alone may explain why a random selection of jurors would also tend to be white. In any event, without "evidence of systematic exclusion . . . [m]ere use of raw population statistics is insufficient."  *Dickerson v. Commonwealth*, 174 S.W.3d 451, 462 (Ky. 2005).

Finally, as an alternative form of relief, Snell asks for an evidentiary hearing to prove how "African Americans are being excluded, intentionally or unintentionally, from the jury panels in Kenton County." (Appellant's Brief at 9-10.) However, "RCr 11.42 motions are not intended to conduct further discovery or fishing expeditions." *Prescott v. Commonwealth*, 572 S.W.3d 913, 926 (Ky. App. 2019). Speculative claims, *i.e.*, "claim[s] that certain facts *might* be true . . . cannot be the basis for RCr 11.42 relief." *Mills v. Commonwealth*, 170 S.W.3d 310, 328 (Ky. 2005), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009).

## III. CONCLUSION

For the foregoing reasons, we affirm the Kenton Circuit Court's order denying relief pursuant to RCr 11.42.

ALL CONCUR.

BRIEFS FOR APPELLANT:

J. Ryan Chailland
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Mark D. Barry
Assistant Attorney General
Frankfort, Kentucky