RENDERED:  OCTOBER 7, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0952-MR

SA'MYRA N. GUERIN                                                    APPELLANT


APPEAL FROM MCCRACKEN CIRCUIT COURT
v.          HONORABLE TIM KALTENBACH, JUDGE
ACTION NO. 20-CR-00217


COMMONWEALTH OF KENTUCKY                              APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; JONES AND L. THOMPSON, JUDGES.

CLAYTON, CHIEF JUDGE:  Sa'Myra Guerin ("Guerin") appeals the McCracken Circuit Court's judgment convicting her of second-degree assault and sentencing her to five (5) years' imprisonment.  Guerin alleges that her trial counsel was unable to provide effective representation due to the size of his caseload; the COVID-19 mask mandates infringed upon her constitutional rights; the jury's

racial makeup violated Guerin's right to a fair trial; and certain jurors were inattentive during her trial. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2020, Brantarius Milliken ("Milliken") was admitted to the hospital with numerous stab wounds to his head and upper body, including a partially collapsed lung. Milliken and several other witnesses told Detective Chelsee Breakfield of the Paducah Police Department that Guerin had stabbed Milliken with a pair of scissors and fled the scene.

Guerin later contacted the Paducah Police Department and agreed to come in for an interview. In the interview, Guerin told Detective Breakfield she had "blacked out" during the altercation, and Milliken had started the fight. Thereafter, Guerin was arrested and charged with first-degree assault. Guerin was later indicted for second-degree assault by means of a deadly weapon. She ultimately pled not guilty to the charge.

A McCracken County jury tried Guerin in May 2021 and found her guilty of second-degree assault. Additionally, the jury recommended the minimum penalty of five (5) years' incarceration. The McCracken Circuit Court sentenced Guerin consistent with the jury's recommendation. This notice of appeal followed.

We will discuss more facts as they become relevant to this Opinion.

## ANALYSIS

Guerin claims the following on appeal: (1) her trial counsel's heavy caseload was prejudicial to her trial, (2) the COVID-19 mask mandate infringed on her right to a fair trial, (3) the jury panel did not represent the community in which Guerin was tried, and (4) the jurors were "inattentive" to the proceedings at trial.

## I.     Ineffective Assistance of Counsel

On this direct appeal, Guerin contends that her trial counsel was not sufficiently prepared during her trial due to the size of his caseload and that Guerin was prejudiced thereby. Although Guerin frames her argument as being constitutional in nature, her claims are essentially that she received ineffective assistance of counsel at the trial court level. However, Guerin's attempt to raise a claim of ineffective assistance of counsel in this direct appeal is procedurally improper. "As a general rule, a claim of ineffective assistance of counsel will not be reviewed on direct appeal from the trial court's judgment, because there is usually no record or trial court ruling on which such a claim can be properly considered." *Humphrey v. Commonwealth*, 962 S.W.2d 870, 872 (Ky. 1998).

In this case, the trial court held no hearing and made no ruling concerning counsel's actual performance at trial. *See id.* As the Kentucky Supreme Court stated, "[t]he issue of insufficient assistance of counsel must be raised at the trial level by means of a post[-]trial motion." *Hopewell v.*

*Commonwealth*, 641 S.W.2d 744, 748 (Ky. 1982) (citation omitted). Guerin did not do so in this case.

Thus, a collateral proceeding in the trial court is the appropriate course of action rather than a direct appeal. *See Humphrey*, 962 S.W.2d at 872. In such a proceeding, the trial court and parties create a proper record concerning whether counsel's performance was deficient and whether such performance was prejudicial to Guerin. *See id*. ("[C]laims of ineffective assistance of counsel are best suited to collateral attack proceedings, after the direct appeal is over, and in the trial court where a proper record can be made."). We therefore decline to review such claims at this time.

## II. COVID-19 Mask Mandate

Guerin next argues that the mask mandate imposed by the Kentucky Supreme Court on all courtrooms during the COVID-19 pandemic unconstitutionally hindered jury selection, resulting in an unfair trial. Additionally, Guerin argues that her counsel's required mask-wearing while questioning witnesses violated Guerin's right to confront witnesses under the United States Constitution's Sixth Amendment and Section 11 of the Kentucky Constitution.

Pursuant to Kentucky Supreme Court Amended Order 2021-06, effective at the time of Guerin's trial, every person was required to wear "a protective facial covering over their mouth and nose while in the courtroom."

However, the mandate specified that a judge could allow a party, attorney, or witness to temporarily remove his or her facial covering "if it [wa]s necessary to create a clear record[.]"

While Kentucky courts have not opined regarding the specific issues Guerin discusses, other jurisdictions have done so. For example, in March 2021, the United States District Court for the Southern District of New York held that a courtroom's mask mandate did not hinder jury selection, noting that "[b]eing able to see jurors' noses and mouths is not essential for assessing credibility because demeanor consists of more than those two body parts since it includes the language of the entire body." *United States v. Tagliaferro*, 531 F. Supp. 3d 844, 851 (S.D.N.Y. 2021) (internal quotation marks and citation omitted).

Additionally, later that year, the United States District Court for the Eastern District of Michigan, Southern Division, upheld their state's mask mandate. The Court stated that, "[a]ll courts that have considered this question so far have universally reached the conclusion that a defendant can still assess a juror's credibility and demeanor during both *voir dire* and trial while the juror is wearing a face mask." *United States v. Schwartz*, No. 19-20451, 2021 WL 5283948, at *2 (E.D. Mich. Nov. 12, 2021) (citations omitted).[1] Moreover,

---

[1] This unpublished opinion is cited pursuant to Kentucky Rule of Civil Procedure 76.28(4)(c) as illustrative of the issue before us and not as binding authority.

nothing in the record indicates that Guerin was not given an opportunity to submit proposed *voir dire* questions for the trial court to ask prospective jurors. Based on the foregoing, we hold that the jury's requirement to wear masks during jury selection and Guerin's trial did not unconstitutionally infringe upon her constitutional rights.

Guerin also claims that the mask mandate infringed upon her right to a fair trial because her counsel's masking denied Guerin her constitutional right under the Confrontation Clause to confront witnesses face-to-face. As discussed by the Kentucky Supreme Court:

> The right to confront one's accusers in a criminal trial is a right guaranteed by the 6th Amendment to the United States Constitution and also by Section 11 of the Kentucky Constitution. The United States Constitution grants the accused the right "to be confronted with the witnesses against him." The Kentucky Constitution grants the accused the right "to meet the witnesses face to face." The difference in language is not significant and both amendments are simply designed to require that a defendant in a criminal case is entitled to a confrontation with his accusers.

*See v. Commonwealth*, 746 S.W.2d 401, 402 (Ky. 1988). Thus, "[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845, 110 S. Ct. 3157, 3163, 111 L. Ed. 2d 666 (1990). Further, as stated by the

-6-

Kentucky Supreme Court, "[t]he Sixth Amendment prescribes that the only method for testing [a witness's] reliability is through cross-examination." *Rankins v. Commonwealth*, 237 S.W.3d 128, 132 (Ky. 2007) (citations omitted).

In this case, each witness testified under oath, the witnesses were unmasked during their testimony at trial, and their statements were subject to Guerin's cross-examination. Thus, Guerin was afforded the full protection of the Confrontation Clause. Accordingly, we affirm as to this issue.

### III. <u>Jury Composition</u>

Guerin next argues that the jury panel selected for her trial did not reflect a fair cross-section of the community because of its lack of African American jurors. As Guerin did not preserve this error at the trial court level, we will proceed under the "palpable error" standard of review. *See* Kentucky Rule of Criminal Procedure ("RCr") 10.26 ("[a] palpable error which affects the substantial rights of a party may be considered by . . . an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.").

The United States Supreme Court has held that "[d]efendants are not entitled to a jury of any particular composition[.]" *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S. Ct. 692, 702, 42 L. Ed. 2d 690 (1975) (citations omitted). Instead, "[t]he Sixth Amendment right to a jury trial includes the right to a petit jury

*selected from* a representative cross-section of the community." *Miller v. Commonwealth*, 394 S.W.3d 402, 409 (Ky. 2011) (citation omitted) (emphasis added).

In *Duren v. Missouri*, the United States Supreme Court detailed three factors that a defendant must prove to establish a *prima facie* violation of the fair cross-section condition of the Sixth Amendment:

> (1) that the group alleged to be excluded is a "distinctive" group in the community;
>
> (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and
>
> (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

439 U.S. 357, 364, 99 S. Ct. 664, 668, 58 L. Ed. 2d 579 (1979).

The Kentucky Supreme Court in *Mash v. Commonwealth*, 376 S.W.3d 548, 551 (Ky. 2012), discussed the preceding factors in circumstances similar to those in this appeal. In *Mash*, the defendant claimed that the jury panel did not reflect a fair cross-section of the community, as only 1 out of 42 prospective jurors was African American. *Id.* While the *Mash* Court found that the defendant had met the first *Duren* requirement, it found that the defendant had not proven the second or third *Duren* requirements. *Id.* at 552.

First, the defendant had "not provide[d] any information to the trial court about the number of African Americans in McCracken County or establish[ed] that there had been systematic exclusion of the group in the jury selection process." *Id*. (citation omitted). While the defendant attempted to prove the second and third *Duren* elements by supplying census data to reflect the African American population in McCracken County, the Court determined that census information was insufficient to prove either the second or third *Duren* factors. *Id*. Rather, "[a] defendant may demonstrate systematic exclusion by providing statistical information showing that a particular group was underrepresented in a county's jury panels *over a period of time*." *Id*. (emphasis in original) (citation omitted).

Ultimately, the *Mash* Court rejected the defendant's allegations regarding the jury panel, stating that "[t]he bare 'one out of 42' statistic, even when considered in conjunction with the census data that was not presented to the trial court, [was] simply not enough to demonstrate unreasonable underrepresentation or systematic exclusion." *Id*. at 553.

Similarly, in *Commonwealth v. Doss*, the Kentucky Supreme Court reiterated that "[t]he right to an impartial jury . . . does not afford a litigant the right to a jury that includes one or more members of his or her ethnic or racial background, religious creed, gender, profession, or other personal characteristic by

which one is identified." 510 S.W.3d 830, 835 (Ky. 2016). Because "[t]he selection of prospective jurors [wa]s . . . accomplished by an indifferent and color-blind computer that produce[d] a randomized list of prospective jurors[,]" *id*. at 836, the Kentucky Supreme Court determined that a trial judge could not dismiss a randomly selected jury panel when the defendant did not show that the panel was drawn from a jury pool that did not reflect a fair cross-section of the community. *Id*. at 837.

Here, Guerin has similarly not proven a *prima facie* violation of the fair cross-section requirement of the Sixth Amendment. Indeed, in contrast to *Mash*, Guerin failed to establish that she even knew the specific demographics of the jury pool in her trial thus failing to verify that the jury pool in her case lacked adequate representation of African Americans. Instead, Guerin acknowledges that two African Americans were present in the jury pool and that it was "difficult to ascertain the exact demographics of those that remained because the juror qualification forms are race[-]neutral and the videos do not show the potential jurors unless they actually approach[ed] the bench."

Moreover, Guerin's claim lacks adequate evidence to support her claim that any underrepresentation resulted from unreasonable underrepresentation or systematic exclusion. Under *Mash*, she failed to meet the second and third

-10-

prongs of the *Duren* factors, as she only provided census data.  376 S.W.3d at 552.

Thus, we find no error.

IV.     <u>**Alleged Inattentiveness of Jury Members**</u>

Guerin last argues that her Sixth Amendment right to a fair trial was infringed upon because she and her mother saw two jurors "nodding off or not paying attention[.]"  Because Guerin did not raise this claim at trial, we will again review Guerin's claim under the palpable error standard.

A panel of this Court has stated that "[a] juror's inattentiveness is a form of juror misconduct, which may prejudice the defendant and require the granting of a new trial."  *Goff v. Commonwealth*, 618 S.W.3d 503, 509 (Ky. App. 2020) (internal quotation marks and citations omitted).  However, "[a]s a threshold matter in cases involving a juror alleged to have been sleeping, an aggrieved party must present *some* evidence that the juror was actually asleep or that some prejudice resulted from that fact."  *Id.* at 510 (emphasis in original) (internal quotation marks and citations omitted).

Here, Guerin acknowledges that "there is virtually no video footage of the jurors."  Thus, she offers nothing in the way of "evidence that the juror was *actually* asleep[.]"  *Goff*, 618 S.W.3d at 510 (emphasis added).  Additionally, Guerin does not assert any prejudice that may have given rise from the juror's inattentiveness, but rather states that "if substantiated, it would definitely prejudice

-11-

the defendant's right to a fair trial in this matter and would warrant reversal of the conviction." Therefore, Guerin has failed to demonstrate a prejudicial error resulting in manifest injustice.

## **CONCLUSION**

For the foregoing reasons, we affirm the McCracken Circuit Court's judgment and sentence.

ALL CONCUR.

BRIEFS FOR APPELLANT:

S. Scott Marcum
Paducah, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christina L. Romano
Assistant Attorney General
Frankfort, Kentucky